JEAN CUKIER, Petitioner-Appellant, v. AMERICAN MEDICAL ASSOCIA-
TION *et al.*, Respondents-Appellees.

First District (5th Division)   No. 1—93—1258

Opinion filed February 25, 1994.

Berman & Trachtman, P.C., of Chicago (Michael H. Berman, of counsel), for appellant.

Jack R. Bierig, Richard D. Raskin, and Susan A. Weber, all of Sidley & Austin, of Chicago (Kirk B. Johnson, Joseph E. Simonaitis, and Wayne G. Hoppe, all of American Medical Association, of counsel), for appellees.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Pursuant to Supreme Court Rule 224, the petitioner, Jean Cukier, M.D. (Cukier), filed a petition for discovery before suit (see 134 Ill. 2d R. 224), seeking to identify those persons or entities who were responsible for alleged defamatory statements made to the respondents claiming that petitioner had a financial interest in the publication of an article he submitted to the Journal of the American Medical Association (JAMA).[1]

The relevant facts are as follows. Cukier and his co-authors submitted a proposed scientific journal manuscript to JAMA in February 1991 for possible publication. Simultaneously, Cukier submitted a statement that he had no financial interest in the publication of the manuscript.

In September 1991 Cukier received a letter from Charles B. Clayman (Clayman), contributing editor of the JAMA, indicating that it had come to their attention that Cukier might have "if not a direct, at least an indirect financial interest in the publication of [the] paper." The letter further stated that JAMA would require a statement of full disclosure of any and all financial interests relating to the publication. Clayman also sent to David A. Trentham, M.D., one of Cukier's co-authors, a letter indicating that allegations had been made concerning possible financial interests in the publication of the paper by Dr. Cukier.

---

[1]Supreme Court Rule 224 provides in relevant part:

"(a) Procedure

\*\*\*

(i) A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery." 134 Ill. 2d R. 224.

In October 1991 petitioner again advised respondents that he had no financial interest in the publication of the submitted paper. In November 1991 petitioner was notified by JAMA that the submitted paper was declined for publication.

On September 29, 1992, Cukier filed his petition for presuit discovery in an attempt to ascertain what person, persons or entity made statements which called into question his professional honesty and integrity by alleging that he had a financial interest in the paper. Cukier named as respondents the American Medical Association (AMA), its publication, JAMA; and one of JAMA's contributing editors, Charles Clayman, M.D.[2]

On November 5, 1992, respondents filed a memorandum in opposition to the petition for discovery before suit, claiming: (1) the information sought was privileged under the Illinois Code of Civil Procedure (Reporter's Privilege Act) (735 ILCS 5/8—901 *et seq.* (West 1992)); (2) the petition violated the free press guarantees of the Illinois Constitution and the first amendment to the United States Constitution; and (3) the information sought was privileged under the Illinois Code of Civil Procedure (the Medical Studies Act) (735 ILCS 5/8—2101 *et seq.* (West 1992)).

On November 12, 1992, petitioner filed his response stating that the privileges which the respondents were claiming did not apply in this case. On November 25, 1992, respondents filed a supplement to their memorandum, wherein respondents argued that petitioner's arguments were without merit.

On February 11, 1993, a hearing was held upon respondents' objection to the discovery. In ruling in favor of the respondents, the trial court applied section 8—907(2) of the Reporter's Privilege Act and found that the specified test had not been satisfied. The trial court stated that in order for petitioner to prevail, he would need to show that no other source for the information existed. In addition, the trial court found a public interest clearly existed in protecting the respondents' confidentiality. The court indicated that it would not rule on the applicability of the Medical Studies Act, noting that the court did not have guidance, but that "the reasons of the Medical Studies Act could sure show and lend credence to the public interest *** involved here." The order of the court denied petitioner's request for presuit discovery, but also granted petitioner 28 days to file a pe-

---

[2]Respondents maintain that JAMA is not a distinct legal entity and, accordingly, that it is not a proper party to the proceedings. However, for convenience purposes on appeal, the respondents have collectively referred to themselves as JAMA or as the AMA.

tition to divest the respondents of their reporter's privilege. See 735 ILCS 5/8—901 *et seq.* (West 1992).

On March 5, 1993, Cukier filed a motion seeking a ruling on the respondents' claimed privilege pursuant to the Medical Studies Act and for an order making the February 11 order final and appealable.

On March 31, 1993, the trial court entered an order denying Cukier's request for a ruling relative to the applicability of the Medical Studies Act, but granting petitioner's request to make the order of February 11 final and appealable pursuant to Supreme Court Rule 304(a). (See 134 Ill. 2d R. 304(a).) Subsequently, Cukier filed this timely appeal.

Cukier presents the following issues for review: (1) whether the trial court erred in denying petitioner's request for pre-suit discovery pursuant to Supreme Court Rule 224; and (2) whether the Medical Studies Act (735 ILCS 5/8—2101 (West 1992)) applies to the present case.

The respondents raise the following three points in support of their argument to affirm the trial court: (1) compelling respondents to comply with Cukier's request would violate the Reporter's Privilege Act; (2) compelling the AMA to disclose its source of the suggestion that Cukier had a financial interest would violate the protection conferred by the Medical Studies Act; and (3) the Illinois and United States Constitutions shield the respondents from discovery requests to the identity of their sources.

For the following reasons, we affirm the decision of the trial court.

Both parties urge this court to rule on the applicability of both the reporter's privilege and the Medical Studies Act. The trial court ruled that the reporter's privilege applied to the present case and dismissed Cukier's complaint on procedural grounds, *i.e.*, that the petitioner failed to plead the necessary requirements for divestiture of the reporter's privilege. The trial court never met the issue of the applicability of the Medical Studies Act. Accordingly, the only issue properly before this court is the applicability and sufficiency of Cukier's complaint under the Reporter's Privilege Act.

■ The Reporter's Privilege Act provides that: "[n]o court may compel any person to disclose the source of any information obtained by a reporter except as provided in Part 9 of Article VII of this Act." (735 ILCS 5/8—901 (West 1992).) The Act defines "reporter" as "any person regularly engaged in the business of collecting, writing or editing news for publication through a news medium on a full-time or part-time basis" (735 ILCS 5/8—902(a) (West 1992)). The definition of "news medium" includes "any newspaper or other periodical issued at regular intervals and having a general circulation." (735 ILCS

5/8—902(b) (West 1992).) Finally, "source" is defined as "the person or means from or through which the news or information was obtained." 735 ILCS 5/8—902(c) (West 1992).

"The reporter's privilege has evolved from a common law recognition that the compelled disclosure of a reporter's sources could compromise the news media's first amendment right to freely gather and disseminate information." (*In re Special Grand Jury Investigation of Alleged Violation of the Juvenile Court Act* (1984), 104 Ill. 2d 419, 424, 472 N.E.2d 450, 452.) The objective of the privilege is "to preserve the autonomy of the press by allowing reporters to assure their sources of confidentiality, thereby permitting the public to receive complete, unfettered information." *In re Subpoena Duces Tecum to Arya* (1992), 226 Ill. App. 3d 848, 852, 589 N.E.2d 832, 834.

The affidavit of George D. Lundberg, M.D., was attached to the respondents' memorandum in opposition to presuit discovery. Dr. Lundberg's affidavit stated the following. Dr. Lundberg was the editor of the JAMA and in that capacity he was responsible for making editorial decisions regarding the content of JAMA and the criteria for submission and publication of manuscripts. JAMA is a weekly general medical journal that publishes scientific articles, commentaries, and news involving all fields of medicine, including medical research, significant clinical observations, diagnostic and therapeutic developments, legal and social matters of interest to physicians, and issues of medical ethics. JAMA's motto, "To promote the science and art of medicine and the betterment of the public health," is published in every issue. JAMA is published in Chicago, Illinois, by the AMA and has approximately 371,000 subscribers in 148 countries. JAMA is also published in 16 international editions with a circulation of approximately 380,000 copies in 37 countries. During the previous year, although over 3,700 articles were submitted to JAMA, fewer than 700 submissions were published.

Dr. Lundberg's affidavit further states that all manuscripts published in JAMA are subjected to peer review. In the peer review process, individuals with expertise in the subject matter of an article review the soundness of the article's methodology and conclusions. JAMA guarantees the confidentiality of its peer reviewers and other individuals who may provide information to JAMA in the course of the editorial process. Dr. Lundberg also stated that JAMA has made a commitment to abide by the strict standards of confidentiality adopted by the International Committee of Medical Journal Editors and that these standards forbid editors from disclosing information about manuscripts, including their receipt, their content, their status in the reviewing process, their criticism by reviewers, or their ultimate fate.

JAMA requires all authors to submit a financial disclosure statement with their manuscripts. Financial disclosure information is not provided to peer reviewers and the fact that an author has a financial interest in the subject area of his article does not preclude publication of said article. The principal purpose of requiring financial disclosure is to determine whether the manuscript, if published, should be accompanied by a statement disclosing the author's financial interest to JAMA's readers.

■ We find that respondents meet the definitions of "reporter" and "news medium" as defined in the Reporter's Privilege Act. Petitioner argues that "the purpose behind the reporter's privilege is to guarantee that the public receives unfettered and complete information thereby protecting the news gathering process from unnecessary intrusion." Petitioner maintains that the present situation does not involve the news gathering activities of the respondents and that whether the petitioner did or did not have a financial interest in his article being published is not part of the news or information gathering activities. We disagree. Respondents allegedly learned of a possible financial interest on the part of the petitioner while evaluating his manuscript. Whether or not this information was relevant to the content of the manuscript does not preclude the possibility that the respondents learned the information during the news gathering process. Moreover, the language of the statute is very clear, that "[n]o court may compel any person to disclose the source of any information obtained by a reporter." (735 ILCS 5/8—901 (West 1992).) Accordingly, for all the reasons set forth above, we find the trial court correctly found the reporter's privilege applicable to the present case.

■ However, once the reporter's privilege has been found to apply, a party may seek to divest the privilege. A party who seeks to divest a reporter or editor of this privilege must apply to the court for such an order. (See 735 ILCS 5/8—903 (West 1992).) The application provided in section 8—903 of the Act must allege:

"[t]he name of the reporter and of the news medium with which he or she was connected at the time the information sought was obtained; the specific information sought and its relevancy to the proceedings; and, either, a specific public interest which would be adversely affected if the factual information sought were not disclosed, or, in libel or slander cases, the necessity of disclosure of the information sought to the proof of plaintiff's case. Additionally, in libel or slander cases, the plaintiff must include in the application provided in Section 8—903 a prima facie showing of falsity of the alleged defamation and actual harm or injury due to the alleged defamation." (735 ILCS 5/7—904 (West 1992).)

In granting or denying divesture of the privilege "the court shall have due regard to the nature of the proceedings, the merits of the claim or defense, the adequacy of the remedy otherwise available, if any, the relevancy of the source, and the possibility of establishing by other means that which it is alleged the source requested will tend to prove." (735 ILCS 5/8—906 (West 1992).) The court should only grant an order of divestiture when the court has made findings that: (1) "the information sought does not concern matters, or details in any proceeding, required to be kept secret under the laws of this State or of the Federal government"; and (2) "all other available sources of information have been exhausted and, either, disclosure of the information sought is essential to the protection of the public interest involved or, in libel or slander cases, the plaintiff's need for disclosure of the information sought outweighs the public interest in protecting the confidentiality of sources of information used by a reporter as part of the news gathering process under the particular facts and circumstances of each particular case." 735 ILCS 5/8—907 (West 1992); see also *In re Special Grand Jury Investigation of Alleged Violation of the Juvenile Court Act* (1984), 104 Ill. 2d 419, 472 N.E.2d 450.

An appellate court has held that "available sources" in section 8—907(2) means those sources that are identified or known or those sources that are likely to become known as a result of a thorough investigation. (*In re Subpoena Duces Tecum to Arya* (1992), 226 Ill. App. 3d 848, 860, 589 N.E.2d 832, 840.) The Illinois Supreme Court has indicated that the provisions of the Act reflect a clear legislative intent to create a standard which balances the reporter's first amendment rights against the public interest in the information sought and the practical difficulties in obtaining the information elsewhere. Therefore, the extent to which an investigation must be carried prior to the time that the reporter's privilege should be divested cannot be reduced to any precise formula or definition, but rather must depend on the facts of each individual case. *In re Special Grand Jury Investigation of Alleged Violation of the Juvenile Court Act* (1984), 104 Ill. 2d 419, 427, 472 N.E.2d 450, 453-54.

■ In applying section 8—907(2) of the Reporter's Privilege Act, the trial court noted that Cukier failed to allege the lack of other available sources for the information requested as well as noting that a public interest exists in protecting confidentiality in the present case. The trial judge granted petitioner 28 days to file a petition to divest respondents of the reporter's privilege. However, rather than choosing this option, Dr. Cukier chose to appeal the trial court's initial decision to apply the reporter's privilege. Since we have al-

166

ready determined that the trial court properly found the reporter's privilege applicable and petitioner did not plead allegations which would permit the court to grant divestiture of the privilege (see 735 ILCS 5/8—907(2) (West 1992)), we are compelled to affirm the decision of the trial court. For all the reasons set forth above, we affirm the decision of the trial court denying petitioner's request for presuit discovery.

Judgment affirmed.

GORDON and COUSINS, JJ., concur.