(No. 86710.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JETTIE WILLIAMS, Appellee.

*Opinion filed November 18, 1999.*

366

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee G. Goldfarb and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel, and Jennifer Bonjean, law clerk), for appellee.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Jettie Williams, pled guilty to the attempted murder of the victim, Leroy Wade. The circuit court of Cook County accepted defendant's guilty plea and, based thereon, convicted and sentenced defendant for that crime. Nearly five years later, the victim died. Defendant was then charged with the victim's murder. At a preliminary hearing, the circuit court granted

defendant's motion *in limine* to bar the State from using the prior guilty plea to attempted murder as evidence at defendant's murder trial.

The State appealed (145 Ill. 2d R. 604(a)(1)). The appellate court upheld the circuit court's *in limine* order (No. 1—97—2930 (unpublished order under Supreme Court Rule 23)). We allowed the State's petition for leave to appeal (177 Ill. 2d R. 315(a)). We now reverse the appellate and circuit courts, and remand the cause to the circuit court for further proceedings.

## BACKGROUND

On February 1, 1989, defendant pled guilty to the charge of attempted murder. See Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 9—1(a). The parties stipulated to the following factual basis for the plea. The victim and defendant were friends; they had known each other for over 10 years and had served time in a penitentiary together. Between midnight and 7 a.m. on September 29, 1986, the victim and defendant were sitting and talking in the front seats of a van. For some unknown reason, defendant produced a pistol and shot the victim once in the head. The victim next remembered awaking in a hospital. The victim's head wound rendered him a paraplegic with very limited use of his arms. After questioning and admonishing defendant, the circuit court found that defendant's guilty plea was knowing and voluntary. See 177 Ill. 2d R. 402. Accordingly, the circuit court convicted defendant of attempted murder and sentenced him to a prison term of nine years.

On April 14, 1994, the victim died. On May 2, 1994, defendant was charged with murder. See Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2). Defendant moved *in limine* to bar the State from using his prior guilty plea to attempted murder as evidence at his murder trial.

At a preliminary hearing, the circuit court granted defendant's motion. The circuit court concluded that the

use of defendant's prior guilty plea to attempted murder as evidence at his murder trial was a "direct consequence" of the guilty plea, and that defendant was never advised of this consequence. Accordingly, the circuit court found that defendant's prior guilty plea to attempted murder was not knowing and intelligent and, therefore, inadmissible at his murder trial.

The appellate court, with one justice dissenting, upheld the circuit court. No. 1—97—2930 (unpublished order under Supreme Court Rule 23). The appellate court reasoned that the use of defendant's guilty plea to attempted murder as evidence at his murder trial was so severe a consequence that it became a "direct" consequence. Thus, the circuit court was required to admonish defendant of this consequence to render his guilty plea knowing and intelligent. The State appeals.

## DISCUSSION

### I. Standard of Review

The parties disagree, as they did before the appellate court, as to the standard of review. The State contends that our review of the circuit court's *in limine* order should be *de novo* because that order centers on an issue of law. Defendant contends that our review should be deferential because it was within the discretion of the circuit court to enter such an order. The appellate court employed a deferential standard of review.

This appeal is from the circuit court's *in limine* order excluding evidence. A motion *in limine* is a pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury. Thus, the *in limine* order will protect the movant from whatever prejudicial impact the mere asking of the questions and the making of the objections may have upon a jury. *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 549 (1981); see generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 103.9 (7th ed. 1999).

A motion *in limine* is addressed to the trial court's inherent power to admit or exclude evidence. A court of review will not reverse a trial court's grant or denial of a motion *in limine* absent a clear abuse of discretion. *People v. Holman*, 257 Ill. App. 3d 1031, 1033 (1994); *People v. Jordan*, 205 Ill. App. 3d 116, 121 (1990); *People v. Escobar*, 168 Ill. App. 3d 30, 43 (1988); *People v. Williams*, 60 Ill. App. 3d 529, 532-33 (1978); see, *e.g.*, *People v. Eddington*, 77 Ill. 2d 41, 44-47 (1979) (*in limine* order reviewed under abuse-of-discretion standard).

However, a trial court must exercise its discretion within the bounds of the law. Where a trial court's exercise of discretion has been frustrated by an erroneous rule of law, appellate review is required to permit the exercise of discretion consistent with the law. *People v. Brockman*, 143 Ill. 2d 351, 363 (1991).

In this case, whether the use of a defendant's prior guilty plea to attempted murder as evidence at the defendant's murder trial was a "direct" consequence of the guilty plea is a question of law. "[W]here the question presented is one of law, a reviewing court determines it independently of the trial court's judgment." *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996).

## II. Admissibility of Guilty Plea

### A. *Knowing and Intelligent*

The State contends that the appellate and circuit courts erred in barring the use of defendant's guilty plea to attempted murder as evidence at his murder trial. The State argues that the guilty plea constitutes an admission based on a knowing and intelligent guilty plea. Defendant contends that the circuit court's *in limine* order was proper. Defendant argues that the circumstances surrounding the guilty plea render it unknowing and, therefore, inadmissible at his murder trial.

The controlling legal principles are quite established. "It is generally held that a voluntary plea of guilty on a

prior trial or hearing, even for another offense, where the plea in effect admits certain facts which are relevant and material on the present trial, is admissible." 23 C.J.S. *Criminal Law* § 883, at 92-93 (1989); accord *United States v. Williams*, 104 F.3d 213, 216 (8th Cir. 1997) (" 'A guilty plea is admissible in a subsequent collateral criminal trial as evidence of an admission by a party opponent' "), quoting *United States v. Holmes*, 794 F.2d 345, 349 (8th Cir. 1986). Illinois has long followed this general rule. *People v. Epping*, 17 Ill. 2d 557, 564-65 (1959); accord M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.4, at 758 (7th ed. 1999). The prior guilty plea is admissible in the subsequent proceeding so long as the guilty plea was voluntary. *People v. Lefler*, 38 Ill. 2d 216, 220 (1967); see also *People v. McLain*, 32 Ill. App. 3d 998, 1000 (1975).

Consequently, the admissibility of defendant's prior guilty plea to attempted murder as evidence at his murder trial depends on whether his guilty plea was voluntary. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 23 L. Ed. 2d 274, 279, 89 S. Ct. 1709, 1711-12 (1969). A defendant who pleads guilty waives several constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. Due process of law requires that this waiver be voluntary and knowing. If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and, therefore, is void. *Boykin*, 395 U.S. at 243 n.5, 23 L. Ed. 2d at 280 n.5, 89 S. Ct. at 1712 n.5, quoting *McCarthy v. United States*, 394 U.S. 459, 466, 22 L. Ed. 2d 418, 425, 89 S. Ct. 1166, 1171 (1969); accord *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1468-69 (1970); *People v. Burt*, 168 Ill. 2d 49, 64 (1995).

Fundamentally then, a defendant's guilty plea must be knowing and intelligent, *i.e.*, the defendant must be " ' "fully aware of the *direct* consequences" ' " of the plea. (Emphasis added.) *Brady*, 397 U.S. at 755, 25 L. Ed. 2d at 760, 90 S. Ct. at 1472. Courts have commonly distinguished the "direct" consequences of a guilty plea from the "collateral" consequences of the plea. A defendant must be advised of the direct consequences of a guilty plea. However, if a consequence of the plea is collateral, then the defendant need not be advised of it before entering the plea. *State v. Ross*, 129 Wash. 2d 279, 284, 916 P.2d 405, 409 (1996); *People v. Ford*, 86 N.Y.2d 397, 403, 657 N.E.2d 265, 267, 633 N.Y.S.2d 270, 272 (1995); *State v. James*, 176 Wis. 2d 230, 238, 500 N.W.2d 345, 348 (App. 1993); *People v. Pozo*, 746 P.2d 523, 526 (Colo. 1987). In other words, the defendant's knowledge of the collateral consequences of a guilty plea is not a prerequisite to the entry of a knowing and intelligent guilty plea. *State v. McFadden*, 884 P.2d 1303, 1304 (Utah App. 1994) (collecting cases); *City of Ottawa v. Lester*, 16 Kan. App. 2d 244, 246, 822 P.2d 72, 74-75 (1991) (collecting cases); accord *People v. Huante*, 143 Ill. 2d 61, 71 (1991); *People v. Warship*, 59 Ill. 2d 125, 128 (1974).

Courts reason that the lone concern is the case in which the plea is entered. Future or contemplated, but uncertain, consequences are irrelevant to the validity of the guilty plea. *Williams v. State*, 641 N.E.2d 44, 46 (Ind. App. 1994). "Manifestly, a criminal court is in no position to advise on all the ramifications of a guilty plea personal to a defendant." *Ford*, 86 N.Y.2d at 403, 657 N.E.2d at 267, 633 N.Y.S.2d at 272. Because the consequences of committing an offense "are so numerous and logically unforeseeable, to require more would be an absurdity and would impose upon the trial court an impossible, unwarranted and unnecessary burden." *State v. Fournier*, 118 N.H. 230, 231, 385 A.2d 223, 224 (1978);

accord *Carson v. State*, 755 P.2d 242, 244-45 (Wyo. 1988) ("We will not require our trial courts to consult astrologers or invoke psychic powers to comply with [that state's disclosure responsibilities in accepting guilty pleas]"). This sound reasoning "reflects the proper concerns for the *** practical administration of criminal justice, and for the integrity of the plea process." *Huante*, 143 Ill. 2d at 71.

A direct consequence of a guilty plea, of which a defendant must be informed, "represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364, 1366 (4th Cir. 1973); accord *Ford*, 86 N.Y.2d at 403, 657 N.E.2d at 267, 633 N.Y.S.2d at 272; *James*, 176 Wis. 2d at 238, 500 N.W.2d at 348; *People v. Moore*, 841 P.2d 320, 324 (Colo. App. 1992). In other words, a trial court's obligation to ensure that a defendant understands the direct consequences of his or her plea encompasses only those consequences of the sentence that the trial judge can impose. See *Michel v. United States*, 507 F.2d 461, 465 (2d Cir. 1974).

"A collateral consequence is one that is not related to the length or nature of the sentence imposed on the basis of the plea." *McFadden*, 884 P.2d at 1304. A collateral consequence generally results from action taken by an agency that the trial court does not control. *Ford*, 86 N.Y.2d at 403, 657 N.E.2d at 268, 633 N.Y.S.2d at 273; *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir. 1977) (and cases cited therein). Collateral consequences include " 'loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, *or anything else.*' " (Emphasis added.) *Cox v. State*, 16 Kan. App. 2d 128, 130, 819 P.2d 1241, 1243 (1991), quoting *State v. Heitzman*, 209 N.J. Super. 617, 622, 508 A.2d 1161, 1164 (1986), *aff'd*, 107 N.J. 603, 527

A.2d 439 (1987). "Accordingly, a guilty plea is not invalid for failure of a trial court to warn a defendant of its possible effect on future criminal liability." *Moore*, 841 P.2d at 324.

Applying these principles to this case, we conclude that the circuit court erred in barring the use of defendant's prior guilty plea to attempted murder as evidence at his murder trial. The circuit court concluded that a direct consequence of the guilty plea was its subsequent use as evidence at his murder trial. The court reasoned: "It's a direct consequence because all the facts are the same. Everything is the same except for the fact that the victim died."

This reasoning is erroneous. It ignores the quite-settled rule that the direct consequences of a guilty plea are limited to the *penal* consequences of that plea, *i.e.*, the consequences that relate to the sentence imposed on the basis of the plea. The subsequent use of defendant's guilty plea to attempted murder as evidence at his murder trial has nothing to do with his sentence for attempted murder. Further, the decision to so use the prior guilty plea was made by the Cook County State's Attorney, whom, of course, the circuit court does not control.

We note that the circuit court expressly relied on a New York trial court case, *People v. Ortiz*, 141 Misc. 2d 747, 534 N.Y.S.2d 316 (1988), which, to the circuit court, provided "dispositive" guidance. Ortiz shot his victim, severely paralyzing him. Pursuant to a plea agreement, Ortiz pled guilty to first degree assault and, based thereon, was convicted and sentenced for that crime. Two years later, the victim died. Ortiz was then charged with second degree murder. He moved to bar the State from using his prior guilty plea as evidence at his murder trial.

The trial court in *Ortiz* held that "[t]he prosecution's

use of Ortiz's allocution against him in a subsequent murder trial is a direct consequence of his guilty plea, and a consequence of which Ortiz should have been alerted." *Ortiz*, 141 Misc. 2d at 752, 534 N.Y.S.2d at 319. The court also reasoned that the subsequent use of Ortiz's guilty plea to assault as evidence at his murder trial was a direct consequence of the guilty plea because "[t]he conduct which formed the basis of the Assault proceeding, namely the shooting of Martinez, is precisely the conduct which forms the basis of the murder trial." *Ortiz*, 141 Misc. 2d at 753, 534 N.Y.S.2d at 320. However, that court overlooked the definition of a direct consequence as limited to sentencing issues surrounding the guilty plea. We question the correctness of that decision, even as a matter of New York law. See *Ford*, 86 N.Y.2d at 403, 657 N.E.2d at 267, 633 N.Y.S.2d at 272 ("A direct consequence is one which has a definite, immediate and largely automatic effect on defendant's punishment").

We likewise conclude that the appellate court erred in upholding the circuit court's *in limine* order. The appellate court reasoned that the use of defendant's prior guilty plea to attempted murder as evidence at his murder trial was so severe a consequence that it became a "direct" consequence. However, like the circuit court and the court in *Ortiz*, the appellate court overlooked the narrow definition of a direct consequence of a guilty plea as relating to the sentence imposed on the plea. The dissenting justice correctly stated the controlling legal principles and correctly concluded "that the possible use of a prior plea of guilty to the charge of attempted murder in a subsequent murder trial is not a direct consequence of the plea of which the defendant must be advised."

## B. *Other Arguments*

We note defendant's argument that we should apply to this case the legal principles that pertain to the with-

drawal of a guilty plea. See *People v. Davis*, 145 Ill. 2d 240, 244 (1991); *People v. Walston*, 38 Ill. 2d 39, 42 (1967). We decline defendant's invitation. Defendant himself concedes that he did not ask the circuit court to withdraw or otherwise vacate his guilty plea to attempted murder.

We lastly note defendant's argument that the circuit court did not err in barring the use of his guilty plea to attempted murder as evidence at his murder trial because its probative value is substantially outweighed by its prejudicial effect. See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 403.1 (7th ed. 1999). We cannot accept this argument. This court is not the proper forum to first consider the question of what evidence should be admitted at trial. Rather, the circuit court is in the best position to decide the effect of evidence on a jury. See *People v. Illgen*, 145 Ill. 2d 353, 375-76 (1991). In this case, the circuit court should consider this issue on remand prior to a court of review doing so. See *People v. Linscott*, 142 Ill. 2d 22, 42 (1991).

Further, as the appellate court dissent noted, at defendant's murder trial the State "must prove that the gunshot wounds inflicted years ago caused the victim's death. This is not an easy task." Moreover, defendant's prior guilty plea to attempted murder would not be used as a *confession* at his murder trial, but rather only as *evidence*. Defendant would have the right to explain the circumstances under which the plea was made. See *Epping*, 17 Ill. 2d at 564-66; *McLain*, 32 Ill. App. 3d at 1000.

## CONCLUSION

In explaining its order barring the use of defendant's guilty plea to attempted murder as evidence at his murder trial, the circuit court conceded that there was "no way to predict" that the victim would die approximately five years subsequent to the guilty plea. This is exactly why courts have narrowly limited the "direct" consequences of a guilty plea, of which a defendant must be

advised, to sentencing issues relating to the plea, which a trial court can control. To hold that the circuit court should have warned defendant of the consequence presented in this appeal would "require our trial courts to consult astrologers or invoke psychic powers." *Carson*, 755 P.2d at 244-45.

For the foregoing reasons, the judgment of the appellate court and the order of the circuit court of Cook County are reversed, and the cause remanded to the trial court for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*