No. 3--08--0805

Filed June 1, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| DONALD MAXON and JANET MAXON, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit |
| Petitioners-Appellants, | ) | La Salle County, Illinois |
| | ) | |
| v. | ) | No. 08--MR--125 |
| | ) | |
| OTTAWA PUBLISHING COMPANY, | ) | |
| a Delaware Limited Liability Company, | ) | Honorable |
| | ) | Eugene P. Daugherity |
| Respondent-Appellee. | ) | Judge, Presiding |

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

Petitioners, Donald and Janet Maxon (the Maxons), appeal from an order of the circuit court of La Salle County dismissing their amended petition for discovery pursuant to Supreme Court Rule 224 (134 Ill. 2d R. 224). The amended petition sought disclosure from respondent Ottawa Publishing Company (Ottawa Publishing) of identifying information concerning the persons responsible for certain comments posted on Ottawa Publishing's Web site, which the Maxons alleged were defamatory. Ottawa Publishing resisted the petition, arguing that the poster's anonymity was constitutionally protected. Ottawa Publishing maintained that, in accordance with a growing trend in other jurisdictions, trial courts in Illinois must take extra steps to protect the anonymity of internet posters. See Dendrite International, Inc. v. Doe No. 3, 342 N.J. Super. 134, 775 A.2d 756 (App. 2001); Doe v. Cahill, 884 A.2d 451 (Del. 2005). The

trial court adopted the analysis articulated in <u>Dendrite</u> and <u>Cahill</u> and dismissed the amended petition, finding that the Maxons had failed to establish that the statements at issue were defamatory. On appeal, the Maxons argue that the dismissal of their petition should be reversed because: (1) the trial court erred in subjecting their petition to the heightened degree of scrutiny required under <u>Dendrite</u> and <u>Cahill</u>; and (2) the trial court erred in finding that the allegedly defamatory statements were not defamatory as a matter of law.

FACTS

Ottawa Publishing publishes The Times, a daily newspaper for general circulation in and around Ottawa, Illinois, as well as an online Internet version of the same newspaper at its web site, MyWebTimes.com (MyWebTimes). Unlike traditional letters to the editor, which must be chosen for publication by the editorial staff of a newspaper, readers of the Internet version may anonymously post comments to a comments section following each article published on the website. Any individual may post his or her unedited comments on MyWebTimes after they complete an online registration. This registration process requires that each person who wishes to post comments establish a unique "screen name" (usually, but not necessarily, a pseudonym), a password for the screen name, and a valid e-mail address so that Ottawa Publishing can communicate with that person individually. Ottawa Publishing does not require or retain additional information such as name, address or telephone number from registered participants, nor does it seek to verify that the e-mail address remains valid after the account is activated. Thus, the only identifying information that Ottawa Publishing had was an e-mail address purported to be a valid means of contacting the anonymous poster.

On March 20, 2008, Ottawa Publishing published an article on MyWebTimes titled: "OTTAWA: Commissioners favor B&B additions, changes." The subject of the article, which generally reported on the Ottawa Planning Commission's consideration of a proposed ordinance to allow bed and breakfast (B&B) establishments to operate in residential areas, precipitated numerous comments by readers. The article did not mention the plaintiffs by name.

One Internet poster, using the screen name "Mary1955" posted:

"Money under the table???????????"

Another poster, "FabFive from Ottawa" (FabFive), later posted:

"Way to pass the buck Plan Commission!! You have dragged this garbage out for over a YEAR now and despite having the majority tell you to NOT change the ordinance you suggest the exact opposite! How dare you! How dare you waste the time of the townspeople who have attended EVERY single one of these meetings to speak out against any changes!! But hey, you don't have the final word so just pass the buck and waste even MORE TIME. How much is Don and Janet from another Planet paying you for your betrayal???? Must be a pretty penny to rollover and play dead for that holy roller...IF this gets anywhere NEAR being passed in favor for the Maxon CULT, you can bet your BRIBED BEHINDS there will be a mass exodus of homeowners from this town...who will you tax then if noone [sic] lives here?" (Emphasis in original.)

On April 17, 2008, Ottawa Publishing published a letter to the editor on MyWebTimes titled "Precedent will be set by changing B&B ordinance!" This letter did not mention the

3

plaintiffs by name. Again, readers published numerous comments online about the issue. FabFive posted:

>"Here's another tidbit to consider folks, Ann brought up how it is possible that the Maxon's [sic] would take the B&B and turn it into some non [sic] for profit church business. Well as it is the Maxon's [sic] plan for the addition were to include a LARGE meeting room...Now since when did a B&B require a meeting room?
>
>The Maxon's [sic] haven't played this straight from the day they filed it. The OPC has not played it straight from any of the meetings regarding this. The plan should never had been pushed to the Town Council when several members of the OPC were not even present to vote on it in the new terms that the BRIBED members had created...And now noone [sic] wants to get caught actually voting on it. This has become a hot potato and the music is about to stop. So who gets burned? The MANY people who have spoken out AGAINST these changes, or the FEW individuals who are behind it?"

On the same day, "birdie1" posted: "FabFive: The bribe has continued since you were last on!!"

On June 9, 2008, the Maxons filed a "Petition for Discovery Before Suit to Identify Responsible Persons and Entities" pursuant to Supreme Court Rule 224, seeking, inter alia, an order requiring Ottawa Publishing to disclose the "name, address, phone number, e-mail address

4

or other account information used to establish their blog[1] 'identity,' the password used for access to the blog, or other identifying information" for "FabFive" and "birdie1."  The petition did not identify the purportedly defamatory comments or indicate that the Maxons had made any effort to notify "FabFive" or "birdie1" that they were seeking information regarding their identity.

On August 28, 2008, Ottawa Publishing filed a motion to oppose the petition.  Attached to the motion was the affidavit of John Newby, publisher of The Times, which stated that he had sent an e-mail to the e-mail addresses on file for "FabFive" and "birdie1" to give notice of the Maxons' petition to each poster.  As a result of this notice, "birdie1" retained an attorney who was granted leave to intervene.  "[B]irdie1" was permitted to appear under a fictitious name.  "FabFive" never appeared.  After a hearing on August 29, 2008, the court granted the Maxons' motion to amend the petition to include the purportedly defamatory statements.

On September 8, 2008, the Maxons filed an amended petition setting forth the allegedly defamatory statements made by "FabFive" and "Mary1955" (the plaintiffs subsequently withdrew the allegations regarding "Mary1955") and Susan Wren (whom plaintiffs came to believe was "birdie1").  Ottawa Publishing filed a motion to dismiss the amended petition, and the Maxons filed a written response.

---

[1]  "Blog" is short for "web log," which is generally defined as a frequently updated Web site consisting of personal observations, excerpts from other sources or, more generally, an online journal or diary.  Quixtar, Inc. v. Signature Management Team, LLC., 566 F. Supp. 2d 1205, 1212 (D. Nev. 2008).  In the instant matter however, the word "blog" refers to the Internet comments posted on MyWebTimes.com.

Following oral arguments, the trial court dismissed the amended petition. In so doing, the court noted that no Illinois case law addressed the question of what degree of analysis was required to grant a Rule 224 petition seeking the identity of anonymous Internet posters alleged to have committed the tort of defamation. The parties proffered several cases from other jurisdictions addressing similar questions. The trial court adopted the analysis articulated in Dendrite and Cahill, which requires that a petitioner seeking the disclosure of an anonymous Internet poster must show that: (1) the anonymous poster has been notified of the potential claim so they may have the opportunity to appear; (2) the petitioners have set forth the exact statements that have been purportedly made by the anonymous person; and (3) the allegations meet a prima facie standard and are able to withstand a hypothetical motion for summary judgment as if brought by one of the potential defendants, at least with regard to elements that are within the petitioner's knowledge. Dendrite, 342 N.J. Super. At 146, 775 A.2d at 764. The trial court noted that the goal in applying the Dendrite-Cahill test was to balance the rights of a person not to be defamed with the first-amendment, free-speech rights of anonymous posters.

Applying the Dendrite-Cahill test, the trial court found that the Maxons had not satisfied the hypothetical summary judgment test because the literary and social context of the statements rendered them nonactionable opinions as a matter of law. See Hopewell v. Vitullo, 299 Ill. App. 3d 513 (1998). The Maxons thereafter appealed.[2]

---

[2] Amicus curiae briefs were filed on behalf of Ottawa Publishing Company by Citizen Media Law Project, Gannett Co., Inc., Hearst Corporation, Illinois Press Association, Online Publishers Association, Public Citizen, Reporters Committee for Freedom of the Press, and Tribune Company.

6

ANALYSIS

1. Standard of Review

At issue is whether the trial court erred in denying the plaintiffs' petition pursuant to Supreme Court Rule 224. The parties disagree as to the applicable standard of review. Generally, this court reviews a trial court's ruling on a Rule 224 petition under an abuse of discretion standard. Kamelgard v. American College of Surgeons, 385 Ill. App. 3d 675, 684 (2008); Gaynor v. Burlington Northern & Santa Fe Ry., 322 Ill. App. 3d 288, 289 (2001). Ottawa Publishing contends that our review should be in accordance with this deferential standard. The Maxons maintain that the appropriate standard of review is de novo. While a trial court may exercise discretion in granting or denying a petition under Supreme Court Rule 224, it is well settled that a trial court must exercise its discretion within the bounds of the law. People v. Williams, 188 Ill. 2d 365, 369 (1999). Where a trial court's exercise of discretion relies upon a conclusion of law, our review is de novo. Williams, 188 Ill. 2d at 369; DiCosola v. Bowman, 342 Ill. App. 3d 530, 534 (2003). Here, the trial court's decision to subject the Maxons' petition to the Dendrite-Cahill test, and its conclusion that the allegedly defamatory statements were nonactionable opinions, were both matters of law which we will review de novo.

2. Supreme Court Rule 224

The specific issue to be decided herein is whether the trial court erred in denying the Maxons' Rule 224 petition. The general problem to be addressed is whether the trial court, in addressing the urgent need to identify a potential defendant so that all injured parties may have redress for injuries suffered protected by Rule 224 (Gaynor, 322 Ill. App. 3d at 294), must also consider the constitutional protections afforded anonymous free speech. In other words, does

7

allegedly defamatory speech enjoy any constitutional protections, such as the right to speak anonymously? Contrary to Ottawa Publishing and the <u>amici</u>, who would have us begin our inquiry with a discussion of the constitutional protections of anonymous speech, a clear understanding of the purpose and scope of Rule 224 is essential before we can address whether the trial court correctly ruled on the Maxons' petition. Rule 224 reads, in relevant part:

"(i) A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery.

(ii) The action for discovery shall be initiated by the filing of a verified petition in the circuit court of the county in which the action or proceeding might be brought or in which one or more of the persons or entities from whom discovery is sought resides. The petition *** shall set forth: (A) the reason the proposed discovery is necessary and (B) the nature of the discovery sought and shall ask for an order authorizing the petitioner to obtain such discovery. The order allowing the petition will limit discovery to the identification of responsible persons ***." 134 Ill. 2d R. 224(a)(1)(i), (a)(1)(ii).

A trial court may grant or deny a petition under Rule 224 in the exercise of its discretion. <u>Gaynor</u>, 322 Ill. App. 3d at 291. A petition under Rule 224 must be verified and is inapplicable to any case where the identity of any potential defendant is already known. <u>Guertin v. Guertin</u>, 204 Ill. App. 3d 527, 532 (1990) (Rule 224 did not authorize trial court to order deposition of decedent's surviving joint tenants to explore possible claim of undue influence where the petition was unverified and the petitioner already knew the identity of all potential defendants). A

8

hearing must be held before the court can grant or deny a Rule 224 petition in order to prevent "fishing expeditions." Kamelgard, 385 Ill. App. 3d at 686; Beale v. EdgeMark Financial Corp., 279 Ill. App. 3d 242, 254 (1996); Shutes v. Fowler, 223 Ill. App. 3d 342, 345 (1991). The use of a Rule 224 petition is limited to discovery of the identity of a potential defendant. Roth v. St. Elizabeth's Hospital, 241 Ill. App. 3d 407, 414-15 (1993); Malmberg v. Smith, 241 Ill. App. 3d 428 (1993) (it was error to grant a Rule 224 petition where identity of potential defendant was already known).

Thus, the jurisprudence of Rule 224 tells us that trial courts in Illinois possess sufficient tools and discretion to protect any anonymous individual from any improper inquiry into his or her identity. The protections offered by Rule 224 are significant. First, the petition must be verified. Second, the petition must state the reason the proposed discovery is necessary. Third, the discovery is limited to the identity of one who may be responsible in damages to the petitioner. Fourth, and most importantly, the trial court must hold a hearing at which it must determine that the unidentified person is "one who may be responsible in damages" to the petitioner. Thus, where a trial court must rule upon a petition to disclose the identity of any anonymous potential defamation defendant pursuant to Rule 224, the court must insure that the petition: (1) is verified; (2) states with particularity facts that would establish a cause of action for defamation; (3) seeks only the identity of the potential defendant and no other information necessary to establish the cause of action of defamation; and (4) is subjected to a hearing at which the court determines that the petition sufficiently states a cause of action for defamation against the unnamed potential defendant, i.e., the unidentified person is one who is responsible in

9

damages to the petitioner. If a trial court considers a Rule 224 petition in accordance with these guidelines, we are convinced that all rights of the potential defendant are protected.[3]

Moreover, trial courts have a readily available mechanism to determine whether the petition sufficiently states a cause of action against the potential defendant in section 2-615 of the Code of Civil Procdure (735 ILCS 5/2-615 (West 2006)). A section 2-615 motion attacks the legal sufficiency of the complaint. Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint. Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 86 (1996). A court considering whether to grant or deny a motion to dismiss pursuant to section 2-615 must determine whether the complaint alone has stated sufficient facts to establish a cause of action upon which relief may be granted. Green v. Rogers, 234 Ill. 2d 478, 491 (2009); Bryson, 174 Ill. 2d at 91 (in ruling on a section 2-615 motion, a trial court may consider only the allegations of the complaint and may not consider any other material).

We note that, as in the instant matter, when the potential complaint at issue in a Rule 224 petition concerns a cause of action for defamation, subjecting the petition to section 2-615 analysis is particularly compelling, as courts routinely address section 2-615 motions in defamation litigation where a plaintiff must overcome first-amendment protections as part of the prima facie case. Green v. Rogers, 234 Ill. 2d 478, 489 (2009); Solaia Technology, LLC v.

---

[3] An affirmative defense of privilege would require a responsive pleading from the defendant and thus would not be appropriately addressed under section 2-615 of the Code. However, privilege is not a matter of constitutional protection and, thus, is not at issue here. See Cukier v. American Medical Ass'n, 259 Ill. App. 3d 159, 166 (1994) (Rule 224 petition denied where respondent raised statutory reporter's privilege).

10

Specialty Publishing Co., 221 Ill. 2d 558, 581 (2006); Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc., 227 Ill. 2d 381, 393-99 (2008); Bryson,174 Ill. 2d at 84. These decisions illustrate that our trial courts routinely address the sufficiency of complaints for defamation by reviewing the factual allegations in the complaint alone. Moreover, these cases also illustrate that constitutional protections are considered as part of the prima facie case, and the plaintiff must plead facts to establish that the allegedly defamatory statements are not constitutionally protected. We therefore hold that subjecting a Rule 224 petition to the same level of scrutiny afforded the sufficiency of a complaint pursuant to section 2-615 will address any constitutional concerns arising from disclosing the identity of any potential defendant.

### 3. Constitutional Anonymity

Ottawa Publishing and the amici maintain that the anonymity of Internet speakers implicates important constitutional concerns, requiring a court to balance the rights of the speaker to anonymity against the rights of a would-be plaintiff. They posit that, in keeping with the long tradition of protecting anonymous speech and ensuring that free comments must be protected, we should impose additional requirements on a Rule 224 petitioner beyond those discussed above.

There is no question that certain types of anonymous speech are constitutionally protected. However, it is overly broad to assert that anonymous speech, in and of itself, warrants constitutional protection. See Talley v. California, 362 U.S. 60, 4 L. Ed. 2d 559, 80 S. Ct. 536 (1960) (invalidating, as unconstitutional prior restraint, local ordinance requiring handbills to provide name of distributors); McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 131 L. Ed. 2d 426, 115 S. Ct. 1511 (1995) (same for state statute prohibiting the distribution of anonymous

11

campaign literature); Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 142 L. Ed. 2d 599, 119 S. Ct. 636 (1999) (same for state statute requiring election initiative petition circulators to wear identification badges, but approving statute requiring circulators to file as a public record an identifying affidavit that revealed their names and other personal information); Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton, 536 U.S. 150, 153 L. Ed. 2d 205, 122 S. Ct. 2080 (2002) (same for local ordinance that required canvassers, solicitors, merchants, and others going onto private property to provide identification in order to obtain a permit). We find nothing in these cases to support the proposition that anonymous Internet speakers enjoy a higher degree of protection from claims of defamation than the private individual who has a cause of action against him for defamation. It is well settled that private individuals and their reputations are more deserving of protection against defamation than public officials or public figures. Gertz v. Robert Welch, Inc., 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974).

Moreover, given that there is no constitutional right to defame, we find no need for the additional procedural requirements articulated in the Dendrite-Cahill test. Ottawa Publishing suggests that we adopt the requirements articulated in these cases: (1) the petitioner must undertake reasonable efforts to notify the anonymous posters that they are the subject of a subpoena seeking their identity; (2) the petitioner must specify the exact statement alleged to constitute the actionable speech; (3) the court must evaluate whether the complaint states a viable legal claim against the anonymous potential defendants; (4) the petitioner must produce sufficient evidence supporting each element of its claim on a prima facie basis; and (5) the court must then balance the potential defendant's first-amendment right of anonymous speech against

12

the strength of the plaintiff's prima facie case and the need for disclosure of the anonymous potential defendant's identity. Dendrite, 342 N.J. Super. at 141-42, 775 A.2d at 760-61. The Cahill court refined the Dendrite requirements, permitting disclosure of an anonymous Internet poster's identity when the petitioner: (1) undertakes efforts to provide notice to the anonymous poster and withholds action to allow a reasonable opportunity to respond; and (2) supports his or her defamation claim with facts sufficient to defeat a hypothetical motion for summary judgment. Cahill, 884 A.2d at 460-61. The Cahill court viewed its "summary judgment" standard as virtually identical to the Dendrite requirement that a plaintiff produce evidence to support each element of its claim on a prima facie basis. Cahill, 884 A.2d at 463.

We find that the requirements articulated in Dendrite and Cahill add nothing to the protections provided by our previous analysis of the jurisprudence of Rule 224 and section 2-615 of the Code. As to the requirement that the petitioner undertake efforts to give notice to the potential defendant, we note that in the instant case, all potential defendants received some degree of notice by Ottawa Publishing. Moreover, a petition under Rule 224 will be denied if the petitioner knows the identity of the prospective defendant. Thus, the trial court may, in its discretion, require either the petitioner or the subject of the petition to provide whatever notice would be in its power to provide. The second Dendrite requirement, that the petition must specify the exact statement alleged to constitute the actionable speech, is met by the Rule 224 requirement that the petition must be verified and must state with particularity facts that would establish a cause of action for defamation, i.e. the reason the proposed discovery is necessary. Likewise, the third Dendrite requirement, that the court evaluate whether the complaint states a viable legal claim against the anonymous potential defendant is essentially the same as the Rule

13

224 requirement that a petition must be subjected to a hearing at which the court determines that the petition states all the elements of the cause of action for defamation.

We acknowledge that the Dendrite requirement that the court balance the potential defendant's first-amendment right of anonymous speech against the strength of the plaintiff's prima facie case and the need for disclosure of the anonymous potential defendant's identity goes beyond our requirements for Rule 224. However, once the court has determined that the prima facie case has been met by the petitioner, he has made out a valid claim for damages and has a right to expect a remedy. Likewise, once the petitioner has made out a prima facie case for defamation, the potential defendant has no first-amendment right to balance against the petitioner's right to seek redress for damage to his reputation, as it is well settled that there is no first-amendment right to defame. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 86 L. Ed. 2d 593, 105 S. Ct. 2939 (1985); Cahill v. John Doe - Number One, 879 A.2d 943, 950 (Del. Super. 2005).

Likewise, we reject the claim that the Maxons' petition must by subjected to a hypothetical motion for summary judgment as suggested in Dendrite and Doe v. Cahill. Illinois is a fact-pleading jurisdiction that requires a plaintiff to present a legally and factually sufficient complaint. Cwikla v. Sheir, 345 Ill. App. 3d 23, 25 (2003). Thus, in this jurisdiction, unlike notice pleading jurisdictions, if a complaint can survive a motion to dismiss, it is legally and factually sufficient and should be answered.

14

4.  Defamation

We must now determine whether the trial court erred in finding that the Maxons did not state a claim for defamation. To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. Solaia Technology, 221 Ill. 2d at 579. A statement is defamatory per se if its harm is obvious and apparent on its face. Owen v. Carr, 113 Ill. 2d 273, 277 (1986). Words that impute a person has committed a crime are considered defamatory per se. Bryson, 174 Ill. 2d at 88. However, a statement that is defamatory per se is not actionable if it is reasonably capable of an innocent construction. Bryson, 174 Ill. 2d at 90. Moreover, if a statement is defamatory per se, and is not subject to an innocent construction, it still may not be actionable if it is an expression of opinion. As our supreme court recently noted:

> "However, there is no artificial distinction between opinion and
> fact: a false assertion of fact can be defamatory even when couched
> within apparent opinion or rhetorical hyperbole. [Citations.]
> Indeed, '[i]t is well established that statements made in the form of
> insinuation, allusion, irony, or question, may be considered as
> defamatory as positive and direct assertions of fact.' [Citation.]
> Similarly, '[a] defendant cannot escape liability for defamatory
> factual assertions simply by claiming that the statements were a
> form of ridicule, humor or sarcasm.' [Citation.] The test is
> restrictive: a defamatory statement is constitutionally protected

15

only if it cannot be reasonably interpreted as stating actual fact."

Solaia, 221 Ill. 2d at 581.

In determining whether a statement is merely an opinion and thus not subject to a cause of action for defamation as a matter of law, courts must take several considerations into account: "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." Solaia, 221 Ill. 2d at 581; Hopewell v. Vitullo, 299 Ill. App. 3d 513, 518-19 (1998).

In the instant matter, the trial court announced that it was following the Hopewell criteria and determined that: (1) the statements that the Maxons had bribed members of the planning commission imputed the commission of a crime; (2) the statements were precise, readily understood, and verifiable; (3) however, their literary and social context signaled that the speaker intended them to be opinions and not statements of fact. As to this third finding, the court held, as matter of law, that the context of the bribery allegation and the fact that it was published on an Internet forum made it clear that the statements were nothing more than conjecture and surmise and a statement of a subjective theory (that the only possible way the planning commission could have rendered its decision was through bribery).

We disagree. We find nothing in the content or the forum to indicate that the allegations that the Maxons bribed a public official could not reasonably be interpreted as stating an actual fact. Solaia, 221 Ill. 2d at 581. Statements that someone has committed bribery in order to obtain a favorable ruling on a zoning matter are, unlike calling someone a "world class crook," "a traitor," or characterizing a negotiating position as "blackmail," not generally taken as mere hyperbole. Moreover, unless we are prepared to hold as a matter of law that nothing published

16

on the Internet is capable of being interpreted as factual, the mere fact that the allegedly defamatory statement is published on the Internet does not render it hyperbole. We are not prepared to do so. Reviewing the trial court's finding <u>de novo</u>, we find that the Maxons have stated cause of action for defamation sufficient to warrant the anonymous individuals to come forward and answer a complaint. The statements that the Maxons bribed certain officials in order to obtain approval for their zoning request are not mere statements of opinion. The mere fact that a statement of fact is couched in the rhetorical hyperbole of an opinion does not render it nonactionable. The test is whether the statement can be reasonably interpreted as stating actual fact. <u>Solaia</u>, 221 Ill. 2d at 581. Here, the statements that the Maxons could only have received a positive result from the permit process by bribery can be reasonably interpreted as stating actual fact. The posts pointed out that the vote by the Commission was subject to unexplained delay, that the Maxons' request to rezone their property was approved even though the Maxons' proposed structure did not suite the purpose of a bed and breakfast ("since when did a B&B require a meeting room"), and that the proposal was changed at the last minute and the vote took place when several members of the Commission were not present. These statements clearly go beyond rhetorical hyperbole and opinion. We find that the statements purport to be factual allegations of bribery by the Maxons and must be answered.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of La Salle County is reversed. The matter is remanded for entry of an order granting the petition for disclosure pursuant to Rule 224.

Reversed and remanded with directions.

17

McDADE, J., concurs.

JUSTICE SCHMIDT, dissenting:

It is well established that anonymous speech is protected by the first amendment. *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 200, 142 L. Ed. 2d 599, 614-15, 119 S. Ct. 636, 646 (1999); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357, 131 L. Ed. 2d 426, 446, 115 S. Ct. 1511, 1524 (1995); *Talley v. California*, 362 U.S. 60, 65, 4 L. Ed. 2d 559, 563, 80 S. Ct. 536, 539 (1960); *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1089 (C.D. Ill. 2001); *Doe v. 2TheMart.com.Inc.,* 140 F. Supp. 2d 1088 (2001). The United States Supreme Court in *McIntrye* stated, "[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre*, 514 U.S. at 342, 131 L. Ed. 2d at 436, 115 S. Ct. at 1516.

The majority state that they can find no case law to support the proposition that "anonymous Internet speakers enjoy a higher degree of protection from claims of defamation than the private individual who has a cause of action against him for defamation." Slip op. at 12. This conclusion, however, misses the point. The protection of the anonymity of speech is a separate issue from the defamatory nature of the speech. In other words, no one suggests that an anonymous speaker deserves a higher degree of protection from claims of defamation than an individual whose identity is known. Rather, it is the anonymity itself that is equally worthy of protection.

Illinois recognized the right to speak anonymously in *People v. White*, 116 Ill. 2d 171, 506 N.E.2d 1284 (1987). In *White*, the supreme court struck down a provision of the election

18

code that required the name and address of a distributor to be printed on certain political pamphlets. The Illinois Supreme Court explained that, "Anonymous political literature was a key weapon in the arsenal of colonial patriots, and '[e]ven the Federalist Papers, written in favor of the adoption of our Constitution, were published under fictitious names.'" *White*, 116 Ill. 2d at 176, quoting *Talley v. California*, 362 U.S. at 65, 4 L. Ed. 2d at 563, 80 S. Ct. at 539. Anonymous pamphlets, leaflets, brochures and books have played an important role in the progress of mankind. *Talley*, 362 U.S. at 64, 4 L. Ed. 2d at 563, 80 S. Ct. at 539. The Internet is simply a modern-day leaflet (with some obvious differences not relevant to our discussion here).

First amendment protections extend to speech via the Internet. See *Reno v. American Civil Liberties Union,* 521 U.S. 844, 885, 138 L. Ed. 2d 874, 906, 117 S. Ct. 2329, 2351 (1997); *Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. 2001). The ability to speak anonymously through the Internet allows for diverse exchange of ideas. The *Dendrite* court explained that the need to provide injured parties with a forum in which they may seek redress for grievances must be balanced against the legitimate and valuable right to participate in online forums anonymously or pseudonymously. Specifically, the court noted:

> "People are permitted to interact pseudonymously and anonymously with each other so long as those acts are not in violation of the law. This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate. Furthermore, it permits

19

persons to obtain information relevant to a sensitive or intimate condition without fear of embarrassment. People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Dendrite*, 342 N.J. Super at 151, 775 A.2d at 767.

I disagree with the majority that the application of Supreme Court Rule 224 (134 Ill. 2d R. 224), coupled with a section 2--615 (735 ILCS 5/2--615 (West 2006)) analysis, provides the same protection to anonymous free speech as the *Dendrite-Cahill* test. The majority states, "a court considering whether to grant or deny a motion to dismiss pursuant to section 2-615 must determine whether the complaint alone has stated sufficient facts to establish a cause of action upon which relief may be granted." Slip op. at 10. Fact pleading is insufficient to address the problem. Fact pleading has simply not eliminated frivolous lawsuits in Illinois. Plaintiffs routinely plead "facts" which later cannot be proven. If "facts" are pled that lead to the discovery of the speaker's identity, and then these facts cannot later be proven, the harm to anonymous speech is a *fait accompli*. Granting the previously anonymous speaker summary judgment would not undo the prior harm: disclosure of the speaker's identity.

I would adopt the *Dendrite-Cahill* test and find that the circuit court below correctly applied it. As set forth above, this four-part test places the burden on a petitioner to demonstrate

that the purported underlying defamation claim could successfully withstand a defendant's motion for summary judgment. *Cahill*, 884 A.2d at 462-63. Ensuring that a petitioner can maintain a defamation case, as a matter of law, before ordering disclosure of identifying information of anonymous Internet commentators sufficiently balances one's right to speak anonymously against protecting another from defamation. As the Arizona Supreme Court concluded, requiring the plaintiff to demonstrate that it would survive a motion for summary judgment "furthers the goal of compelling identification of anonymous internet speakers only as a means to redress legitimate misuses of speech rather than as a means to retaliate against or chill legitimate uses of speech." *Mobilisa, Inc. v. Doe*, 217 Ariz. 103, 111, 170 P.3d 712, 720 (App. 2007).

Application of the *Dendrite-Cahill* test adds a crucial extra layer of protection to anonymous speech, beyond that proposed by the majority. The additional procedural requirements articulated in the *Dendrite-Cahill* test are not designed to protect defamatory anonymous speech. Rather, they are designed to protect the identity of those participating in nonactionable anonymous speech. Once an anonymous speaker's identity is revealed, it cannot be "unrevealed."

Clearly, the right to speak anonymously is not absolute. The majority correctly observes that there is no constitutional right to defame and that words that impute a person has committed a crime are considered to be defamatory *per se*. Slip op. at 15, citing *Bryson*, 174 Ill. 2d at 88. However, even though a statement may fit into a defamatory *per se* category, it still may be constitutionally protected if it cannot reasonably be interpreted as stating actual fact. *Hopewell*, 299 Ill. App. 3d at 518.

21

From a review of the record, I also agree with the circuit court's finding that the context of the bribery allegations at issue, and the fact they were published on an Internet forum, make it clear that the statements are nothing more than conjecture, surmise, and a statement of subjective theory. There is no suggestion that the blogger knew how the permit process worked or had any substantial evidence that a crime was committed. In light of the statement's social context, no reasonable person would interpret this to be a statement of fact. *Hopewell*, 299 Ill. App. 3d at 518. Any reasonable person would construe the words for what they were: the venting of one's spleen by someone disgruntled by the decision of a local body politic.

For the foregoing reasons, I respectfully dissent.