NOTICE

Decision filed 11/29/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190237-U

NO. 5-19-0237

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 17-CF-451 |
| | ) | |
| ROMONDO S. BOOTCHEE, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where defendant's guilty plea was knowing and voluntary, the circuit court did not err in denying his motion to withdraw the plea. Any argument to the contrary would lack merit. Defendant's appointed appellate attorney is granted leave to withdraw as counsel, and the judgment of conviction is affirmed.

¶ 2    Pursuant to a fully negotiated agreement with the State, defendant, Romondo S. Bootchee, pled guilty to armed robbery and was sentenced to 25 years' imprisonment. Defendant's motion to withdraw the guilty plea was denied, and he now appeals. Defendant's court-appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis, filed a motion to withdraw as counsel, along with a brief in support thereof. See *Anders v. California*, 386 U.S. 738 (1967). Defendant filed a lengthy response to OSAD's motion, plus a supplement to the response. This court agrees with OSAD and determines this

1

appeal does indeed lack merit. Accordingly, we grant OSAD leave to withdraw as counsel and affirm the judgment of conviction.

¶ 3                                    BACKGROUND

¶ 4                                    *The Charge*

¶ 5     In November 2017, defendant was charged by indictment with armed robbery and robbery. Both charges stemmed from the same incident.

¶ 6     The armed robbery count alleged that "defendant, or one for whose conduct he is accountable, while armed with a dangerous weapon, a firearm, knowingly took property, being $110.00 cash money and a pocketknife, from the person of Zachary A. Wilson, by threatening the imminent use of force, in violation of 720 ILCS 5/18-2(a)(1), a Class X felony." In truth, section 18-2(a)(1) of the Criminal Code of 2012 (Code) covers those situations in which an armed robber "carries on or about his or her person or is otherwise armed with a dangerous weapon *other than* a firearm." (Emphasis added.) 720 ILCS 5/18-2(a)(1) (West 2016). Whereas, section 18-2(a)(2) covers armed robbery with "a firearm." *Id.* § 18-2(a)(2).

¶ 7                                    *The Plea of Guilty*

¶ 8     On January 3, 2018, defendant, defense counsel, and a prosecutor appeared before the court. The prosecutor and defense counsel both indicated that a plea agreement had been reached. The prosecutor stated that, under the terms of the agreement, defendant would plead guilty to armed robbery and would be sentenced to imprisonment for 25 years—"10 years, plus the 15-year enhancement"—with day-for-day credit, and pay $110 in restitution, while the robbery count would be dismissed. In addition, the charges in Jefferson County case Nos. 17-CF-452 and 17-TR-4145 would be dismissed, the petition to revoke probation (PTR) in Jefferson County case No. 16-CF-300 would be dismissed, and the State would agree not to file a PTR in Jefferson County case

2

No. 16-CF-294. Defense counsel indicated that the plea agreement had been accurately stated. The court then asked defendant whether the stated terms of the plea agreement matched his understanding, and defendant answered, "Yes."

¶ 9    At the court's request, the prosecutor provided a factual basis for the plea. According to the prosecutor, the complainant would testify that he had contacted defendant to buy drugs, but when the complainant got into a car with defendant and two other men for that purpose, defendant grabbed the complainant's sweatshirt and the two other men stuck a gun in his side and took $110 and a pocketknife from him. Defendant indicated that the State's factual basis was correct. The attorneys waived preparation of a presentence investigation report. They and defendant agreed that defendant had two prior convictions for burglary and two misdemeanor convictions for retail theft and illegal possession of ammunition.

¶ 10    The court told defendant—and defendant indicated he understood—that he did not have to plead guilty to anything. The court admonished defendant that he was presumed innocent, and that this presumption remained with him until he either pled guilty or was proved guilty at a trial. The court said the presumption would remain with defendant throughout a trial, unless and until the State—which had the burden of proof—proved him guilty beyond a reasonable doubt. The court further stated that defendant had a right to a trial by jury, but he could waive that right and have a trial by the court instead, with the same rules of evidence and the same burden of proof. The court continued that defendant had a right to an attorney, a right to confront and cross-examine witnesses, the right to present a defense, the right to testify or to remain silent, and his silence could not be used against him by the jury or judge. Finally, the court admonished defendant that he would be giving up all these rights by pleading guilty. Defendant indicated that he understood and further indicated that he still wanted to plead guilty to armed robbery. The court discussed

some collateral consequences of pleading guilty and asked defendant whether he still wished to plead guilty to armed robbery, a Class X felony, upon this plea agreement, and defendant answered, "Yes."

¶ 11　The court admonished defendant that if he went to trial and lost, he faced a prison sentence of "6 to 30 years," and that if it were proven beyond a reasonable doubt "that you were in possession of a firearm when you committed that offense, *** they can tack on 15 years to that," and therefore the maximum sentence was "really 45 years." Three years of mandatory supervised release would follow any prison sentence. Defendant indicated his understanding of the sentencing scheme. "And knowing that," the court asked, "do you wish to still persist in your plea of guilty to armed robbery, a Class X felony, upon this plea agreement?" Defendant answered, "Yes."

¶ 12　Defendant acknowledged his written plea of guilty. He indicated that nobody had forced or threatened him into signing the plea, nobody had promised him anything, apart from the plea agreement, in order to obtain his signature, and he wanted the court to accept the signed plea as his free and voluntary act. Defendant indicated that he had discussed the matter adequately with his attorney, did not need more time to discuss it, and was satisfied with his attorney's services.

¶ 13　The court accepted defendant's plea, finding it knowing, intelligent, voluntary, and supported by a factual basis. It further found that defendant understood his rights, understood that he was giving up those rights by pleading guilty, and understood the sentencing he faced if he went to trial and lost. In accordance with the parties' agreement, the court sentenced defendant to 25 years in prison, "which I guess translates to 10 years in the Illinois state penitentiary with a 15-year mandatory add-on," and ordered him to pay restitution of $110. The court also dismissed the robbery count and dismissed the charges in case Nos. 17-CF-452 and 17-TR-4145, dismissed the

4

PTR in case No. 16-CF-300, and stated that the State would not file a PTR in case No. 16-CF-294. Finally, the court thoroughly admonished defendant as to his appeal rights.

¶ 14                    *Motion to Withdraw Guilty Plea*

¶ 15    Later in January 2018, defendant filed a *pro se* motion to withdraw his guilty plea. According to defendant, his attorney never reviewed discovery with him, and told him that pleading guilty was the best option and he had "no chance" of prevailing at trial. Defendant felt "pressured and threaten[ed]" by counsel into accepting the plea.

¶ 16    In April 2018, defendant filed a *pro se* amended motion to withdraw guilty plea. Defendant claimed that he felt "threaten[ed,] forced and manip[u]lated" into pleading guilty because: (1) plea counsel would not let him see the discovery materials; (2) he asked plea counsel "to speak up in open courts [*sic*] to object [to] things," but she refused; (3) plea counsel assured defendant that if he accepted the plea, charges would not be filed against him in Jackson County, but charges were filed in Jackson County; and (4) plea counsel refused defendant's request for time to think about the plea offer and discuss the matter with his family, saying that the time to accept the plea offer was "now or never." He explained that "he had depression on [his] shoulders and was forced to make a decision in a matter of minutes."

¶ 17    In June 2018, the court appointed a new postplea attorney for defendant. On December 12, 2018, postplea counsel filed an amended motion to withdraw guilty plea. It incorporated defendant's *pro se* motion and claimed that the plea of guilty should be withdrawn for the following reasons: (1) plea counsel never reviewed the State's discovery materials with defendant; (2) plea counsel never filed motions to prevent the State from disclosing illegally obtained evidence; (3) plea counsel told defendant that in exchange for his plea of guilty in the instant case, the prosecutor would not bring charges in Jackson County, but the prosecutor did bring charges in

Jackson County after defendant's guilty plea; (4) defendant was pressured into accepting the plea offer, without adequate time to consider the consequences of pleading guilty; (5) plea counsel insisted that accepting the plea offer was in defendant's best interests after he told plea counsel that he wanted a trial; (6) defendant felt threatened into accepting the plea offer, and feels that plea counsel was ineffective in light of the State's unfulfilled promise to refrain from filing charges in the other matter; and (7) defendant was not subject to the 15-year enhancement applicable to section 18-2(a)(2), or the charging instrument was simply filed in error, because he was charged under section 18-2(a)(1), which concerns armed robbery with a dangerous weapon *other than* a firearm, and not under section 18-2(a)(2), which addresses armed robbery with a firearm.

¶ 18    Accompanying the amended motion to withdraw guilty plea was postplea counsel's certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). Counsel's certificate stated that counsel had consulted with defendant in person, by mail, by phone, or by electronic means to ascertain his contentions of error "in the entry of the plea of guilty and the sentence"; examined the court file and the reports of proceedings of the guilty plea and the sentencing hearing; and "made any amendments to the motion necessary for an adequate presentation of any defects in those proceedings."

¶ 19                                  *Hearing on Guilty-Plea Withdrawal*

¶ 20    On May 23, 2019, the circuit court held a hearing on the amended motion. Defendant testified that he was represented in this case, at different times, by attorneys Paige Strawn and Letisha Luecking. Attorney Strawn represented him for one month, then withdrew due to a conflict of interest. During her representation, Strawn never met with defendant at the Jefferson County jail, where he was being held on bond. She never discussed his case with him, and she never reviewed with him any of the discovery materials from the State.

6

¶ 21    Defendant also testified that attorney Luecking visited him twice at the jail, once by herself and once in the company of a detective. During the first visit, defendant asked to see the motion for discovery; Luecking said that she had it, but did not have time to review it with him and that they would review it at another time. Luecking never did allow him to see any of the discovery in his case. During the second visit, the detective "was trying to question [defendant]," but Luecking stated that she had "a proffer" from the State if defendant was willing to give honest information about his case. Defendant said that he did not want to do that. The detective left the room so that defendant and Luecking could talk. Luecking said she felt confident that she could get defendant's probation "reinstated" with "a proffer" only if he would be truthful about what happened in his case. Defendant averred sometime after, "[w]e held the proffer," and "they made me sign some papers." Defendant said that he wanted to read the papers, but Luecking said that she had read them and it was the best possible outcome for defendant.

¶ 22    Sometime before he pled guilty, defendant filed a Freedom of Information Act (FOIA) request for the police reports in his case. He could not remember whether he received the reports prior to or after pleading guilty. However, "[m]ostly everything was blacked out" in the reports; defendant could not determine who said what or how the evidence was obtained. Through his FOIA request, defendant became aware of a police search for cameras and video and "[s]everal inconsistent statements" made by the complainant regarding why he met with defendant and the role defendant played in the crime. Defendant stated his lawyers never filed a motion to suppress the complainant's statements, and defendant never saw video surveillance footage.

¶ 23    Defendant met with Luecking twice at the courthouse, once for a bond-reduction hearing and once for the guilty-plea hearing. On the day of the guilty-plea hearing—January 3, 2018—but prior to appearing in court, defendant discussed his cases with Luecking at the Jefferson County

7

courthouse. At the time, defendant was not taking the prescription drugs of Concerta and Remeron to address his "ADHD, anxiety and depression," although he took those drugs since first being diagnosed with those afflictions at childhood. Plea counsel informed defendant that a 15-year sentence enhancement applied in his Jefferson County case, but that if defendant accepted the plea offer, Jackson County would not pursue the charges against him. Defendant stated that he needed more time to think and to discuss the matter with family, but Luecking said it was "now or never" and that the plea bargain was the best available option for him. He asked Luecking, "what about trial?" and she replied that she did not want to take his case to trial. He asked, "what about the proffer?" and she said that the State had not mentioned it again and that perhaps the State did not feel that he was being truthful. Defendant decided to plead guilty. Luecking instructed him on how to answer questions from the judge; answer "yes" to questions such as whether he had sufficient time to consider the plea offer and answer "no" to questions such as whether any promises, apart from the plea offer, were made to him. Defendant pled guilty on January 3, 2018. On January 11 or 12, contrary to Luecking's assurances, Jackson County indicted him.

¶ 24 The State called two witnesses at the plea-withdrawal hearing, the two attorneys who had represented defendant in this case, Strawn and Luecking. Strawn testified that she was appointed to represent defendant sometime prior to November 2017. On November 7, 2017, she received "some police reports" as the first discovery tendered in the case. According to Strawn, "[t]here wasn't a huge amount of discovery at that time" because the case "was still unfolding." The next day, November 8, she visited defendant at the Jefferson County jail and "reviewed all of that discovery with him." Shortly afterward, Strawn heard from a police detective and from someone in the state's attorney's office that she could have a conflict of interest with defendant, due to her representation of another client in a separate and unrelated case. She sought and obtained evidence

8

from the state's attorney relating to the conflict of interest. After reviewing that evidence with defendant, she filed a motion to withdraw as defendant's counsel due to the conflict. For her testimony relating to the review of discovery with defendant, Strawn relied heavily on her billing records that she had filed with the court. She could not remember much more about her conversations with defendant due to the passage of time.

¶ 25    Luecking testified that she was appointed to represent defendant in December 2017. She visited defendant at the Jefferson County jail and met with him at the courthouse. The first visit was on December 8, 2017, when she and defendant reviewed discovery in the case, including two short videos. On January 3, 2018—the date defendant ultimately pled guilty—Luecking received a plea offer from the State. The plea offer involved a sentence of 25 years' imprisonment, with day-for-day credit, in the instant case, and involved all of defendant's pending cases in Jefferson County. Luecking informed defendant of the plea offer. Defendant asked Luecking about a Jackson County murder case in which he might be charged, and said he wanted to have that case dealt with in the Jefferson County plea deal. Luecking replied that the Jackson County matter could not be handled as defendant wanted, because charges had not yet been filed and the crime was committed in another county. Luecking stated, "I told [defendant] I absolutely could not do anything with the Jackson County charge." She felt sure that she had discussed with defendant the potential penalties in this case, even though she could not recall any specifics. She did not recall whether she had prepared defendant for questioning by the court during the plea hearing. However, she was sure that there was no agreement regarding the Jackson County case, defendant knew there were no promises regarding any charges in Jackson County, and she did not instruct defendant to say that there were no promises apart from the stated plea agreement to obtain his plea of guilty.

9

¶ 26 Postplea counsel called Damon L. Johnson as a rebuttal witness. He testified that on January 3, 2018, he was at the Jefferson County courthouse, in the sheriff's custody. For a time, he sat next to defendant, who was also in custody, as defendant and his attorney discussed defendant's case. The attorney told defendant to answer "yes" to all of the judge's questions, and she assured him that regardless of what sentence was imposed, she would arrange for it to be "cut down."

¶ 27 After hearing the evidence and arguments of the State and postplea counsel, the court denied defendant's motion to withdraw guilty plea. The court specifically found that defendant had entered a knowing, intelligent, and voluntary plea of guilty.

¶ 28 After the ruling, the State moved to amend the indictment—specifically, change the count charging defendant with armed robbery to cite to section 18-2(a)(2) of the Code, instead of section 18-2(a)(1). Over defendant's objection, the court granted the State's motion to amend.

¶ 29 Defendant filed a timely notice of appeal. The circuit court appointed OSAD to represent defendant on appeal.

¶ 30                                    ANALYSIS

¶ 31 This appeal is from a judgment of conviction, which was entered after a fully negotiated guilty plea. Defendant challenges the circuit court's denial of his motion to withdraw the guilty plea. When the circuit court reaches the merits of a motion to withdraw guilty plea, the decision to grant or deny that motion "rests in the sound discretion of the circuit court and, as such, is reviewed for an abuse of discretion." *People v. Hughes*, 2012 IL 112817, ¶ 32. "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

10

¶ 32    As previously mentioned, OSAD, defendant's appointed attorney on appeal, filed an *Anders* motion to withdraw as counsel, on the ground that this appeal lacks merit. Along with its motion, OSAD filed a brief raising no fewer than six potential issues. Those potential issues are (1) whether defendant's plea counsel provided ineffective assistance for failing (i) to show discovery materials to defendant, (ii) to file a motion to suppress evidence that was illegally obtained, and (iii) to impeach the alleged victim; (2) whether defendant's guilty plea was freely and voluntarily made where defendant (i) was depressed, and not on his prescribed medication, (ii) was pressured into accepting the plea offer without being allowed to consult with family members and without additional time to consider the consequences; (iii) felt threatened into accepting the plea; and (iv) was told by plea counsel that accepting the plea offer was in his best interests; (3) whether the circuit court abused its discretion in allowing the State to amend the indictment so as to change the statutory citation from section 18-2(a)(1) of the Code to section 18-2(a)(2); (4) whether defendant was prejudiced when he pled guilty to a count that alleged an armed robbery with a firearm but the statutory citation was to section 18-2(a)(2), which described armed robbery with a dangerous weapon *other than* a firearm; (5) whether the circuit court abused its discretion in denying defendant's amended motion to withdraw guilty plea where he testified that he was promised charges would not be filed against him in Jackson County if he pled guilty in Jefferson County, and shortly after his plea of guilty, charges were filed in Jackson County; and (6) whether plea counsel's certificate complied with Illinois Supreme Court Rule 604(d).

¶ 33    Also as previously mentioned, defendant has filed a lengthy response to OSAD's motion, plus a supplemental response. In addition to restating the points he made in his motion to withdraw guilty plea and in his testimony at the hearing on that motion, defendant also raises new issues that were not raised in his motion to withdraw guilty plea. These new issues are deemed forfeited (see

11

Ill. S. Ct. R. 604(d) (eff. July 1, 2017)), and we address only those that were raised in defendant's postplea motion.

¶ 34    This court will first examine whether defendant's guilty plea was knowing and voluntary. Defendant argues his plea was involuntary because he was not taking medication to address his "ADHD, anxiety and depression," plea counsel refused to allow him additional time to discuss the deal with his family, and he took the plea only because plea counsel promised Jackson County would not file charges against him.

¶ 35    A defendant who pleads guilty waives numerous constitutional rights—such as the right to a trial, the right to confront and cross-examine the State's witnesses, the right to testify or to refrain from testifying—and "[d]ue process of law requires that this waiver be intelligent and voluntary." *People v. Williams*, 188 Ill. 2d 365, 370 (1999). If the waiver is not knowing and voluntary, "it has been obtained in violation of due process and, therefore, is void." *Id.* Illinois Supreme Court Rule 402 (eff. July 1, 2012) describes procedures that the circuit court must follow before accepting a defendant's guilty plea. "Substantial compliance with Rule 402 is sufficient to establish due process." *People v. Fuller*, 205 Ill. 2d 308, 323 (2002). Rule 402(a) states that a court shall not accept a plea of guilty without first informing defendant and determining that he understands: (1) the nature of the charge; (2) the minimum and maximum sentence; (3) that he has the right to plead guilty or not guilty; and (4) that if he pleads guilty, there will not be a trial of any kind, and he will waive the right to trial by jury and the right to be confronted with the witnesses against him. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). With respect to voluntariness, Rule 402(b) states that a court "shall not accept a plea of guilty without first determining that the plea is voluntary," which requires the court to confirm the terms of the plea agreement in open court, and "determine whether

12

any force or threats or any promises, apart from a plea agreement, were used to obtain the plea."
Ill. S. Ct. R. 402(b) (eff. July 1, 2012).

¶ 36    As this court's synopsis of the guilty-plea hearing makes clear, the circuit court went above and beyond the mandates of Rule 402. It meticulously questioned defendant—and he indicated his understanding—about the charge, the possible sentences, his right to plead guilty or not guilty, his right to a trial, and his rights at trial. Furthermore, defendant indicated that he had discussed the matter adequately with his attorney, did not need more time to discuss it, and was satisfied with his attorney's services. The prosecutor stated the plea agreement's terms, and defense counsel agreed the terms were stated accurately. The court then asked defendant whether the stated terms of the plea agreement matched his understanding, and defendant answered, "Yes." Defendant also indicated that nobody forced or threatened him, or promised him anything—apart from the plea agreement—in order to obtain his guilty plea.

¶ 37    Much of defendant's testimony at the hearing on his motion to withdraw his guilty plea was specifically contradicted by plea counsel's testimony. As the trier of fact, the court was free to discount defendant's testimony at the hearing, and to credit plea counsel's testimony. See *People v. Mercado*, 356 Ill. App. 3d 487, 497 (2005) (the circuit court "bears the burden of assessing the credibility of witnesses who testify at a hearing on a motion to withdraw a guilty plea").

¶ 38    Importantly, defendant's testimony ran counter to his answers to the court's questions at the plea hearing on January 3, 2018. At the plea hearing, defendant never suggested the lack of prescription drugs impaired his thinking or his will. When the court asked defendant whether the State's recitation of the plea agreement—which did not mention the Jackson County charges— was correct, defendant indicated that it was. Defendant also indicated to the court at the plea hearing that he had discussed the plea agreement adequately with his attorney, did not need more

13

time to discuss it, was satisfied with his attorney's services, and nobody promised him anything—apart from the plea agreement—to persuade him to plead guilty. In short, the record shows the court's procedures comported with Rule 402, due process, and defendant entered his guilty plea both knowingly and voluntarily.

¶ 39   In the face of a perfectly valid plea of guilty, a few of the potential issues discussed by OSAD in its *Anders* brief must be rejected. A valid plea of guilty waives all nonjurisdictional errors or irregularities, even constitutional defects, that were committed prior to the guilty plea. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). Thus, in general, after a defendant pleads guilty, he may not raise claims of deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *People v. Ivy*, 313 Ill. App. 3d 1011, 1017 (2000). This general rule comes from the fact that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

¶ 40   The claims that plea counsel was ineffective for (i) failing to show discovery materials to defendant, (ii) failing to file a motion to suppress evidence that was illegally obtained, and (iii) failing to impeach the alleged victim, are all factual allegations that occurred prior to the entry of defendant's guilty plea. As such, these claims are barred. *Id.*; *Ivy*, 313 Ill. App. 3d at 1017 (postconviction petitioner's claims of ineffective assistance of counsel were barred as they concerned constitutional deprivations that "occurred prior to the entry of defendant's guilty plea").

¶ 41   Two of OSAD's potential issues concern the indictment's original citation to section 18-2(a)(1) of the Code, and the circuit court's allowing the State to amend that indictment to cite to section 18-2(a)(2) of the Code—after the court ruled on defendant's motion to withdraw guilty plea, and over defendant's objection. Section 18-2(a)(1) covers situations where defendant commits armed robbery while armed with a weapon "other than a firearm" (720 ILCS 5/18-2(a)(1)

14

(West 2016)), while section 18-2(a)(2) covers situations where the weapon is "a firearm" (*id.* § 18-2(a)(2)).

¶ 42    Section 111-3 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) requires a charge to include both "the statutory provision alleged to have been violated" and "the nature and elements of the offense charged." 725 ILCS 5/111-3(a)(2), (a)(3) (West 2016). Section 111-5 of the Code of Criminal Procedure allows for the amendment of an indictment "at any time" to correct "formal defects," including any "miswriting." *Id.* § 111-5(a). An error in the citation of a statute is a mere technical defect that is subject to amendment. *People v. Ross*, 395 Ill. App. 3d 660, 668 (2009). Amendment is warranted especially where there is no resulting surprise or prejudice to defendant. *People v. Flores*, 250 Ill. App. 3d 399, 401 (1993).

¶ 43    From the beginning, the indictment read that that "defendant, or one for whose conduct he is accountable" was "armed with a dangerous weapon, a firearm," when he took the complainant's property. At the guilty-plea hearing, the prosecutor described how defendant grabbed the complainant's sweatshirt while the two other men stuck a gun in the complainant's side and took his property, and defendant conceded this factual basis was correct. Accordingly, the amendment of the indictment—changing section 18-2(a)(1) to section 18-2(a)(2)—did not surprise or prejudice defendant.

¶ 44    Finally, OSAD raises the potential issue of whether postplea counsel's certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) was adequate. Rule 604(d) describes the duties that postplea counsel owes to a defendant who seeks to withdraw his guilty plea, namely: (1) a duty to consult with defendant, (2) a duty to examine the court file and reports of proceedings, and (3) a duty to amend a *pro se* motion to withdraw guilty plea. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). The rule also requires postplea counsel to file a certificate indicating

15

that he has fulfilled those duties, thus enabling the circuit court to ensure that counsel has reviewed defendant's claim and considered all the relevant bases for the postplea motion. *People v. Tousignant*, 2014 IL 115329, ¶ 16. Counsel must strictly comply with the certification requirement. *In re H.L.*, 2015 IL 118529, ¶ 8. Despite a facially valid certificate, we may nevertheless remand for compliance when the record rebuts that counsel fulfilled his or her obligations under Rule 604(d). *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8.

¶ 45    Here, postplea counsel filed his certificate along with the amended motion to withdraw plea. Counsel's certificate closely tracked the language of Rule 604(d), and there is nothing in the record to conclude counsel otherwise failed to comply. Accordingly, postplea counsel fulfilled his duties, and defendant therefore had a fair opportunity to challenge his plea of guilty.

¶ 46                                    CONCLUSION

¶ 47    Defendant knowingly and voluntarily pled guilty. In the face of this valid plea, all nonjurisdictional errors committed prior to the guilty plea were waived. In addition, there was no error in the amendment of the indictment, and postplea counsel's certificate of compliance with Rule 604(d) was satisfactory. The circuit court therefore did not abuse its discretion in denying defendant's motion to withdraw his guilty plea. Any argument to the contrary lacks arguable merit. Accordingly, OSAD is granted leave to withdraw as defendant's counsel on appeal, and the judgment of conviction is affirmed.

¶ 48    Motion granted; judgment affirmed.