2022 IL App (3d) 200404

Opinion filed July 5, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0404 Circuit No. 06-CF-285 |
| KAREN F. McCARRON, | ) ) ) | The Honorable Katherine S. Gorman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Daugherity concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        The defendant, Karen McCarron, was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)), concealment of a homicidal death (*id.* § 9-3.1(a)), and obstruction of justice (*id.* § 31-4(a)) and was sentenced to consecutive sentences of 36 years of imprisonment and 30 months of probation. This appeal involves a *pro se* postconviction petition McCarron filed in 2018, which focused on a change in the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) that gave an inmate the right to present a claim based on post-partum depression (PPD) and post-partum psychosis (PPP). Appointed counsel then filed a motion for

appointment of experts related to McCarron's PPD/PPP claim. The matter was advanced to the second stage of postconviction proceedings, during which the circuit court denied counsel's motion and dismissed McCarron's petition. On appeal, McCarron argues that the court's rulings were erroneous. We reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3        The facts underlying this case have been set out in our two prior decisions in this case. *People v. Frank-McCarron*, 403 Ill. App. 3d 383 (2010) (affirming convictions and sentences); *People v. McCarron*, 2013 IL App (3d) 110873-U (affirming the dismissal of McCarron's first postconviction petition). We repeat only those facts necessary for the disposition of this appeal.

¶ 4        In May 2006, McCarron strangled and killed her three-year-old daughter, who had autism. The State subsequently charged her with two counts of first degree murder, two counts of obstructing justice, and one count of concealment of a homicidal death. The evidence presented at trial included expert opinions regarding McCarron's mental state at the time of the crime, as she had raised an insanity defense. Dr. Joseph Glenmullen, a psychiatrist testifying on behalf of the defense, opined that McCarron suffered from major depressive disorder, recurrent, in 2005, which developed into psychotic depression in 2006. As evidence of McCarron's psychotic depression, Dr. Glenmullen emphasized McCarron's delusional thoughts, which included her statement that she believed she was killing autism when she killed her daughter. However, Dr. Glenmullen also acknowledged that McCarron had seen a psychiatrist between August 2005 and February 2006 and that psychiatrist had not observed any delusional thinking in McCarron.

¶ 5        The State presented the testimony of Dr. Terry Killian, a psychiatrist who opined that McCarron suffered from recurrent major depression. Dr. Killian also opined that McCarron exhibited no signs of psychosis or delusional thinking.

2

¶ 6      At the close of the trial, the jury found McCarron guilty on all counts. The circuit court entered judgment of conviction on one count of first degree murder, one count of obstruction of justice, and the count of concealment of a homicidal death. McCarron was later sentenced to consecutive sentences of 36 years of imprisonment and 30 months of probation.

¶ 7      On direct appeal, this court affirmed McCarron's convictions and sentences. *Frank-McCarron*, 403 Ill. App. 3d 383. One of the arguments McCarron raised that this court rejected was that she proved she was insane at the time of the murder; more specifically, she argued that Dr. Glenmullen's expert opinion proved that "she could not appreciate the criminal nature of her actions at the time of the murder because she suffered from psychotic depression." *Id.* at 396.

¶ 8      In March 2011, McCarron filed a postconviction petition in which she alleged, *inter alia*, that trial counsel rendered ineffective assistance because he chose to attack her recorded confessions as unreliable and coerced, rather than focusing on her declining mental state and alleged "religious delusions" in support of her insanity defense. The circuit court dismissed McCarron's petition at the second stage, and this court affirmed the circuit court's decision on appeal. *McCarron*, 2013 IL App (3d) 110873-U. Regarding McCarron's aforementioned argument, this court held that McCarron had confessed to several other friends and relatives and that the matter was one of trial strategy. *Id.* ¶ 21.

¶ 9      In November 2018, McCarron filed a *pro se* postconviction petition, alleging, *inter alia*, that she suffered from post-partum depression (PPD) or post-partum psychosis (PPP) at the time of her offenses. Due to a change in the Post-Conviction Hearing Act, she claimed she was entitled to a new trial or a new sentencing hearing, at which she should be allowed to present evidence on PPD and PPP.

3

¶ 10    McCarron attached a report to her postconviction petition that had been compiled by Dr. Lisa Rone in January 2011. In that report, Dr. Rone concluded that McCarron was psychotic at the time she killed her daughter in May 2006. Dr. Rone, who had interviewed McCarron in October 2010, noted in her report that "McCarron was diagnosed with postpartum depression after [her younger daughter's] birth [in April 2004]." While McCarron took antidepressants for a short time in May 2004, she ceased taking them because she was concerned about passing them on to her younger daughter through breast milk.

¶ 11    Dr. Rone opined that (1) McCarron had been suffering from a bipolar disorder-mixed episode in the weeks leading up to the murder, which had been worsening, (2) McCarron was having extreme religious delusions at the time of the murder, and (3) McCarron did not disclose those delusions out of "fear of ridicule and humiliation regarding the religious delusions and [her husband's] presence during the [police] interview." Dr. Rone also concluded that because McCarron "concealed the religious nature of her delusions from Dr. Glenmullen," Dr. Glenmullen "could not offer a full psychiatric explanation of her worsening psychiatric illness which culminated in the religious delusions that drove Ms. McCarron's actions at the time."

¶ 12    Of particular relevance, Dr. Rone opined that

"Ms. McCarron experienced a progressive worsening of her affective illness culminating in agitation, loss of control and delusional psychosis between August, 2005 and May, 2006. The mood episode that began after [her younger daughter's] birth in April, 2004 never remitted, nor did Ms. McCarron have a prolonged period of stabilization between her postpartum episode and the events of May, 2006. Her symptoms worsened after she

4

abruptly discontinued her psychotropic medication around April 1, 2006."

¶ 13 After the circuit court advanced McCarron's petition to the second stage, counsel was appointed to represent McCarron. He subsequently filed a motion for appointment of experts related to McCarron's PPD/PPP claim. The motion sought the appointment of Dr. Rone to conduct an updated evaluation of McCarron, as well as the appointment of another psychologist who specialized in PPD and PPP diagnosis and treatment.

¶ 14 The State filed responses to McCarron's petition and motion. The former was a motion to strike. Regarding the latter, the State argued, *inter alia*, that the issue of McCarron's mental health was thoroughly addressed during her trial and that current evaluations were unnecessary and would not be probative or reliable.

¶ 15 The circuit court held a hearing on September 14, 2020, at which it denied the State's motion to strike McCarron's petition but granted the State leave to file an answer or other response. Additionally, the court denied McCarron's motion for appointment of experts, noting that (1) McCarron murdered her oldest daughter 25 months and 4 days after her youngest daughter was born, (2) the statutory definitions of PPD and PPP indicated that the legislature "intended to define postpartum depression or psychosis from the date of the defendant's last pregnancy to that child's first birthday," and (3) "another evaluation more than 14 years after the homicide could only be described as cumulative to the other evidence offered at the time of trial."

¶ 16 The State subsequently filed a motion to dismiss McCarron's petition, and the circuit court held a hearing on that motion on October 9, 2020. The court reiterated its interpretation of the PPD and PPP statutory definitions as limiting their existence to one year past the last child's

birthday. The court also noted that the sentencing judge thoroughly considered McCarron's mental health at sentencing, evidenced in part by the fact that the presentence investigation report compiled for McCarron's sentencing hearing in March 2008 dedicated 121 of its 201 pages to discussing her mental health. Accordingly, the court dismissed McCarron's petition.

¶ 17    McCarron appealed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, McCarron argues that the circuit court erred when it denied her motion for appointment of experts and when it dismissed her postconviction petition at the second stage. Because the court's two rulings are inextricably intertwined, we will address them simultaneously.

¶ 20    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a three-stage process by which criminal defendants can challenge substantial deprivations of their constitutional rights. If the petition survives first-stage dismissal, the defendant has the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the circuit court may appoint counsel for the defendant, and the State is allowed to file responsive pleadings to the petition. 725 ILCS 5/122-4, 122-5 (West 2018).

> "[T]he 'substantial showing' of a constitutional violation that must be made at the second stage [(*People v. Edwards*, 197 Ill. 2d 239, 246 (2001))] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagala*, 2013 IL 113688, ¶ 35.

6

¶ 21     We review the second stage dismissal of a postconviction petition *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Additionally, we note that the circuit court's denial of McCarron's motion for appointment of experts is also reviewed *de novo* because it was based on statutory interpretation. See *People v. Williams*, 188 Ill. 2d 365, 369 (1999) (holding that *de novo* review applies when the question is whether the circuit court's exercise of its discretion was frustrated by an erroneous rule of law).

¶ 22     Between June 1, 2018, and August 15, 2019, the Post-Conviction Hearing Act contained the following provision:

"(a) Any person imprisoned in the penitentiary may institute a proceeding under this Article if the person asserts that:

* * *

(3) by a preponderance of the evidence that each of the following allegations in the petition establish:

(A) he or she was convicted of a forcible felony;

(B) his or her participation in the offense was a direct result of the person's mental state either suffering from post-partum depression or post-partum psychosis;

(C) no evidence of post-partum depression or post-partum psychosis was presented by a qualified medical person at trial or sentencing, or both;

7

(D) he or she was unaware of the mitigating nature of the evidence or if aware was at the time unable to present this defense due to suffering from post-partum depression or post-partum psychosis or at the time of trial or sentencing neither was a recognized mental illness and as such unable to receive proper treatment; and

(E) evidence of post-partum depression or post-partum psychosis as suffered by the person is material and noncumulative to other evidence offered at the time of trial or sentencing and it is of such a conclusive character that it would likely change the sentence imposed by the original court.

Nothing in this paragraph (3) prevents a person from applying for any other relief under this Article or any other law otherwise available to him or her.

As used in this paragraph (3):

'Post-partum depression' means a mood disorder which strikes many women during and after pregnancy which usually occurs during pregnancy and up to 12 months after delivery. This depression can include anxiety disorders.

8

'Post-partum psychosis' means an extreme form of
post-partum depression which can occur during pregnancy
and up to 12 months after delivery. This can include losing
touch with reality, distorted thinking, delusions, auditory
and visual hallucinations, paranoia, hyperactivity and rapid
speech, or mania." 725 ILCS 5/122-1(a)(3) (West 2018).

¶ 23    Our supreme court has recently reiterated the law applicable to performing statutory interpretation:

"The fundamental rule of statutory interpretation is to
ascertain and give effect to the legislature's intent, and the best
indicator of that intent is the statutory language, given its plain and
ordinary meaning. [Citation.] The statute must be viewed as a
whole, and as such, this court construes words and phrases not in
isolation but relative to other pertinent statutory provisions.
[Citation.] We likewise keep in mind the subject addressed by the
statute and the legislature's apparent intent in enacting it.
[Citation.]" *People v. Hartfield*, 2022 IL 126729, ¶ 68.

¶ 24    In this case, McCarron claims that the circuit court erroneously construed the statutory definition of PPD as limiting its existence at one year past the last child's birthday. We agree. The statutory definitions of PPD and PPP contain only general descriptions of when the conditions tend to develop and how they can present themselves. See 725 ILCS 5/122-1(a)(3) (West 2018). The circuit court appears to have construed the term "occur" as requiring the conditions to have started and concluded within the time frames the statute discusses, but that

9

construction is mistaken. While "occur" is not defined in the statute, common and ordinary dictionary definitions of "occur" are "to be found; exist," "to present itself; come to mind," and "to take place; happen." Webster's New World Dictionary 937 (3d college ed. 1988). These definitions connote origin, not duration. Therefore, we hold that the statutory definitions of PPD and PPP do not evince an intent by the legislature to place strict temporal limits on those conditions. Accordingly, we hold that the circuit court erred when it denied McCarron's motion to appoint experts and dismissed her postconviction petition based on what it perceived to be temporal limits in the statute.

¶ 25    Our analysis does not end there, however. The circuit court also denied McCarron's motion for appointment of experts and dismissed her postconviction petition on the basis that any evidence of PPD would be cumulative to evidence already presented at her trial and at sentencing.

¶ 26    The circuit court's finding that the PPD evidence would be cumulative related to subsection (a)(3)(E): "[E]vidence of post-partum depression or post-partum psychosis as suffered by the person is material and noncumulative to other evidence offered at the time of trial or sentencing and it is of such a conclusive character that it would likely change the sentence imposed by the original court." 725 ILCS 5/122-1(a)(3)(E) (West 2018).

¶ 27    The record does not support the circuit court's finding that PPD evidence would be cumulative because the issue of McCarron's mental health was thoroughly addressed at her trial and at her sentencing hearing. "Evidence is considered cumulative when it adds nothing to what was already before the jury." *People v. Ortiz*, 235 Ill. 2d 319, 335 (2009). It is undisputed that no evidence was presented at trial or at sentencing that McCarron may have suffered from PPD at the time she murdered her daughter. Moreover, if it was not apparent already, when the

legislature chose to create a specific PPD-based claim in the Post-Conviction Hearing Act, it made clear that while PPD is a form of major depression, it requires particularized evidence and has not been adequately addressed when only general evidence of depression has been introduced at trial or sentencing. For these reasons, we hold that the circuit court erred when it held that PPD-based evidence would be cumulative.

¶ 28    We again emphasize that at the second stage of postconviction proceedings, the petitioner's well-pled allegations are to be taken as true unless positively rebutted by the record. *Domagala*, 2013 IL 113688, ¶ 35. The resolution of factual issues is not appropriate at the second stage. See *id.* In this case, McCarron presented evidence that she had been diagnosed with PPD in 2004. Because the Post-Conviction Hearing Act briefly gave defendants the opportunity to base a petition on PPD, and because the circuit court erroneously ruled that McCarron's motion for appointment of experts and postconviction petition were precluded by law, we hold that the court's rulings must be reversed and the case remanded for the court to grant McCarron's motion for appointment of experts and for third-stage proceedings.

¶ 29                                  III. CONCLUSION

¶ 30    The judgment of the circuit court of Tazewell County is reversed, and the cause is remanded for further proceedings.

¶ 31    Reversed and remanded.

11

2022 IL App (3d) 200404

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Tazewell County, No. 06-CF-285; the Hon. Katherine S. Gorman, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Steven Varel, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, Thomas D. Arado, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |