**NOTICE**
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240822-U

NOS. 4-24-0822, 4-24-0823 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| MATTHEW STEVEN LAMPI, | ) | Nos.22CF2664 |
|     Defendant-Appellant. | ) | 23CF207 |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer J. Clifford, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, finding (1) a lifetime order of protection was not a direct consequence of defendant's guilty plea about which the trial court was required to admonish him, (2) postplea counsel conformed with the requirements of Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023) in amending defendant's motion to withdraw his guilty plea, and (3) defendant did not establish deficient performance on the part of plea counsel.

¶ 2   Pursuant to a plea deal, defendant, Matthew Steven Lampi, pleaded guilty to one count of stalking (720 ILCS 5/12-7.3(a)(2) (West 2022)) in case No. 22-CF-2664 and one count of aggravated stalking (*id.* § 12-7.4(a)(3)) in case No. 23-CF-207. At the time of defendant's pleas, his former partner, E.D. had an order of protection (OP) against him, naming herself and their two minor children as protected parties. When defendant pleaded guilty, the OP became permanent pursuant to section 112A-20(b)(5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/112A-20(b)(5) (West 2022)). Defendant later filed a motion to withdraw his guilty pleas, which

the trial court denied.

¶ 3    On appeal, defendant argues the trial court erred in not allowing him to withdraw his guilty pleas where he was not admonished by the court prior to pleading guilty that the OP would become permanent as a result of his convictions. Alternatively, he argues (1) postplea counsel failed to make necessary amendments to his motion to withdraw his guilty pleas, as required by Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023), or (2) guilty-plea counsel was ineffective for failing to inform him of the permanent OP that would result from his pleas. On defendant's motion, we consolidated his appeals in each case.

¶ 4    We affirm.

¶ 5                    I. BACKGROUND

¶ 6    On November 2, 2022, defendant was charged in case No. 22-CF-2664 with stalking, a Class 4 felony (720 ILCS 5/12-7.3(a)(2) (West 2022)), and criminal trespass to residence, a Class 4 felony (*id.* § 19-4(a)(2)). He was later indicted on the same charges, with the indictment alleging that between October 2, 2022, and October 17, 2022, he surveilled and monitored E.D.'s whereabouts at her residence and place of employment, made repeated nonconsensual contact with her by phone and text, and entered her residence without authority. In conjunction with the case, an OP was entered against defendant in the interest of E.D. and the two children she and defendant shared. The order did not list a specific end date but instead provided that its expiration was tied to the resolution of the underlying criminal prosecution.

¶ 7    On January 24, 2023, defendant was charged in a second case, case No. 23-CF-207, with harassment by telephone (*id.* § 26.5-2(a)(2)) and violation of an OP (*id.* § 12-3.4). He was later indicted in this case on one count of aggravated stalking, a Class 3 felony (*id.* § 12-7.4(a)(3)), two counts of telephone harassment, Class 4 felonies (*id.* § 26.5-2(a)(2); *id.* § 26.5-5(b)(3)), and

two counts of violation of an OP, Class A misdemeanors (*id.* § 12-3.4). The indictment alleged that defendant repeatedly called and texted E.D., left gifts outside of her residence, and sent messages indicating he was surveilling her, all in knowing violation of the OP.

¶ 8 On April 13, 2023, defendant appeared in court to enter a negotiated guilty plea in each case. Under the plea agreement, defendant would plead guilty to one count of stalking (*id.* § 12-7.3(a)(2)) in case No. 22-CF-2664 and one count of aggravated stalking (*id.* § 12-7.4(a)(3)) in case No. 23-CF-207. In exchange for this plea, the State would dismiss the remaining counts in both cases and recommend a sentence of 24 months' concurrent probation and 180 days in the Winnebago County jail, with 80 days stayed and 50 days of credit for time served. After the State relayed these terms to the trial court, the court asked, "Is that the agreement?" The State answered, "Yes. And there's an OP that I'll be asking you address afterwards, but that's the agreement."

¶ 9 Before accepting his plea, the trial court addressed defendant. It informed him of the counts to which he would be pleading guilty and the possible resulting sentences, including mandatory supervised release and fines. It also informed him that pleading guilty could impact his ability to obtain or retain housing, employment, a firearm, or an occupational license, subject him to enhanced or consecutive sentencing on a new charge, and affect his status if he were not a citizen of the United States. Defendant acknowledged the admonishments and repeatedly confirmed his wish to plead guilty. Additionally, on the court's questioning, he confirmed that he had been given the opportunity to speak with his attorney about his decision, was satisfied with his attorney's representation, and was making the decision of his own free will. The court accepted defendant's guilty pleas, finding they were knowingly, intelligently, and voluntarily made and were supported by a factual basis.

¶ 10 After informing defendant of his right to appeal, the trial court asked the State about

the OP. The State responded, "[R]egarding 22 OP 2389, the final [OP] in that case, which is premised upon 22 CF 2664 *** I believe my client in that manner [*sic*], [E.D.], is entitled to a lifetime [OP]. So I've indicated January 1st of 2099 as the end date." The court then addressed defendant, stating, "At that time that we entered that [OP], there wasn't an end date. So now, in essence, we have that end date. Do you understand that, [defendant]?" Defendant replied, "Yes."

¶ 11    On May 11, 2023, defendant filed a *pro se* motion to withdraw his guilty plea in each case. In the motion, he alleged that his plea attorney, Sean Thompson, failed to act on his request for an Illinois Supreme Court Rule 402 (eff. July 1, 2012) conference, at which defendant believed he would have had the opportunity to present mitigating evidence on his charges. On June 28, 2023, he filed a supporting affidavit and an additional motion to modify or amend his sentencing. At a hearing on the same day, the trial court appointed the public defender to represent him postplea.

¶ 12    On January 10, 2024, postplea counsel filed an amended motion. It alleged that defendant "did not knowingly, intelligently, and voluntarily waive his right to a jury trial, nor did the defendant fully understand or comprehend the admonishments of the Court *** at the time of the entry of the plea of guilty." The motion specifically alleged ineffective assistance of plea counsel, stating that Thompson failed to request a Rule 402 conference despite defendant's wishes, failed to review discovery materials with defendant, and failed to inform defendant "prior to the plea that a lifetime OP would be put in place as part of the plea agreement." The motion stated that defendant only learned of the lifetime OP after pleading guilty, and he would not have done so had he known that it "would be imposed as part of the sentence." The motion also alleged that defendant's sentence did not align with his criminal background or the goal of rehabilitation and stated that justice would be better served by a jury trial. In addition to the amended motion,

postplea counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Dec, 7, 2023), verifying that he had consulted with defendant to ascertain defendant's contentions of error in the entry of his plea, had examined the trial court file and the relevant reports of proceedings, and had made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings.

¶ 13      A hearing was held on the amended motion on March 14, 2024. At the hearing, defendant testified that Thompson did not review any discovery materials with him. He stated that prior to his plea, he told Thompson that he wanted a Rule 402 conference in order to present evidence on his behalf and negotiate. Defendant testified that he was adamant in his discussions with Thompson that he was innocent and that his priority was having contact with his children. Although he initially received an offer from the State for a 36-month term of probation, he rejected it because he was told it would result in a permanent OP for his children. He testified that he thought the plea deal he accepted would not result in such an order, stating:

> "I, I was confused—I was not under the impression when I was in court and presented with the, the term of probation that I'm on now, in court was[,] it was not expressed so I agreed to it in the courtroom because there was no mention of the [OP] until after I had acknowledged the agreement in court."

When asked specifically if his attorney discussed the lifetime OP that would result from his guilty plea, defendant stated he did not remember. On cross-examination, he acknowledged that at the time he was offered the initial plea agreement, he was informed by counsel that a lifetime OP would result as a matter of law from a stalking conviction. However, he believed that the permanent OP had been negotiated away in the second agreement and thought that the OP would only exist for the duration of his probation. The State then asked, "And while that may be true for

non-stalking cases, it had been explained to you that on a conviction for stalking it would be a lifetime [OP]?" Defendant responded, "I don't remember." The State continued, "But that was your testimony today?" Defendant answered, "Yes."

¶ 14    Thompson testified that he went through reports, the bill of indictment, the complaint, and photos of call records with defendant. He stated that he did not recall defendant specifically asking for a Rule 402 conference but knew that defendant wanted him to relay evidence in mitigation to the trial court. On cross-examination, he confirmed that the decision not to have a Rule 402 conference was strategic, as the conference may have exposed the court to material unfavorable to defendant. He testified that defendant was primarily concerned with maintaining contact with his children and getting out of custody. He stated that he told defendant on multiple occasions about the lifetime OP and informed him that he could either go to trial and be found not guilty such that the order would not become permanent, or he could take a plea deal and a permanent OP would result as a matter of law. He testified that defendant originally intended to accept the first plea deal he was offered, but at the hearing at which he was supposed to plead guilty, he became emotional. Thompson stated:

> "[H]e started crying and I know why he was crying, he wanted to see his kids again; the kids are his most important thing to him. I had gone over that, hey, this was going to be a lifetime [OP] and he still wanted to go through the plea before that and then when he got up there, he says, I can't do this. I don't know if he specifically articulated that it was because of the kids, but when a client says I'm not going to go through with the plea, I'm not going to make him go through it and I said, okay; I'm going to set this for trial as per our earlier agreement."

Thompson confirmed that prior to trial, he contacted the State to relay that defendant wished to

accept the previous offer. He stated he did not represent to defendant that the circumstances regarding the lifetime OP had changed between the first and second plea agreements.

¶ 15 Following the witness testimonies, the trial court asked the parties, "Does anybody have any case law that has anything to do with impact of an unrelated, really, [OP] and having on a plea; is there—does that even need to be admonished about?" Counsel for defendant said he had not found anything. The court then continued the case to allow for further research on the issue of admonishments.

¶ 16 At a hearing on May 15, 2024, the trial court denied defendant's motion to withdraw his guilty plea. In explaining its decision, the court noted that a Rule 402 conference was irrelevant because the purpose of a Rule 402 conference was only to inform the court of the plea agreement and learn if the court would accept it. Since defendant had accepted the plea agreement, there would be no reason for him to present mitigating factors to the court. The court further found that Thompson's testimony that he had explained the lifetime OP to defendant was credible but noted that even if he had not, it would not matter. The court explained, "[N]othing about the [OP] is relevant in terms of this Court. That's what we would call a collateral consequence or a downstream impact of that. It's not a basis to withdraw a plea of guilty."

¶ 17 This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19 On appeal, defendant argues the trial court erred in denying his motion to withdraw his guilty pleas where he was not admonished by the court of the mandatory lifetime protection order that would result from his convictions. Alternatively, he argues that he should have been allowed to withdraw his pleas because (1) postplea counsel was ineffective for failing to amend his motion, as required by Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023), to include the

issue of the court's lack of admonishment or (2) plea counsel was ineffective for failing to inform him of the mandatory lifetime OP. We will address each argument in turn.

¶ 20                              A. Completeness of the Record

¶ 21        As a threshold matter, the State argues that the record on appeal does not contain a copy of the permanent OP and, in the absence of this order, we must presume that the trial court's order conformed with the law and had a sufficient factual basis. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). The State asserts that, "[w]ithout any permanent order in the record, this Court cannot evaluate defendant's claims regarding its scope or the trial court's authority to enter it."

¶ 22        While the State's assertions are generally correct, they are not relevant to defendant's appeal. Defendant's appeal does not concern the *validity* of the OP; he does not, as the State suggests, contest the scope of the order, nor the trial court's authority to enter it. Instead, his appeal concerns the voluntariness of his guilty pleas, which he claims was affected by the resulting OP. See 725 ILCS 5/112A-20(b)(5) (West 2022). For purposes of our review, then, it is enough to know that an OP against defendant existed and became permanent after defendant's guilty plea. We find the record sufficient to allow us to reach this conclusion, as it includes a copy of the OP that was filed on January 13, 2023, and a transcript of the hearing on defendant's guilty plea where the State provided January 1, 2099, as the new end date for the order, and the court then admonished defendant that the order was being altered to contain a new end date. We find further support for our conclusion in section 112A-20(b)(5), which provides that stalking no contact orders remain in effect permanently following a conviction for stalking. *Id.* Here, the record shows that a protective order was issued against defendant and that defendant was later convicted of stalking. We find this adequate to conclude that a permanent OP was entered, even without the inclusion of this order in the record.

¶ 23                               B. Admonishments

¶ 24                                  1. *Waiver*

¶ 25        The State also argues that defendant has waived any challenge to the trial court's alleged failure to admonish him prior to his guilty plea because he did not object during the plea proceedings or raise this claim in his amended motion to withdraw his guilty plea. Defendant responds that the issue is not waived because (1) his motion to withdraw his guilty pleas "highlighted concerns regarding the lack of proper admonishment about the lifetime [OP]" and (2) the court acknowledged the issue at the hearing when it inquired into any relevant case law and discussed the collateral nature of the admonishments in its decision.

¶ 26        Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023) provides that no appeal from a judgment entered upon a guilty plea shall be taken unless the defendant first files a motion to withdraw the plea and vacate the judgment. Additionally, under Rule 604(d), any issue not raised in the motion is deemed waived. *Id.*

¶ 27        Here, defendant filed a *pro se* motion to withdraw his guilty plea on May 11, 2023. Counsel for defendant then filed an amended motion on January 10, 2024. Despite defendant's liberal reading of his motions, neither of them challenged the sufficiency of the admonishments offered by the trial court prior to his plea. While the amended motion asserted that defendant's guilty plea was not voluntary because he was unaware of the lifetime OP that would result from his plea, it did so only within the context of his attorney's alleged failure to inform him of this fact. Put another way, defendant's motion raised an issue of ineffective assistance of counsel, not improper admonishments.

¶ 28        However, we note that this case presents a somewhat less clear application of the waiver command of Rule 604(d). While defendant here did not raise the issue of guilty plea

admonishments in his postplea motion, he nevertheless presented the issue to the trial court at the hearing on his motion when he stated that the permanent OP was not expressed to him in court prior to his guilty pleas. As a result, the court heard the issue and clearly considered its merits, even continuing the hearing to allow the court and the parties to research the issue further. Thus, while not complying with the mandates of Rule 604(d), defendant nevertheless, perhaps inadvertently, complied with the purpose of the rule. See *People v. Heider*, 231 Ill. 2d 1, 18 (2008). Our supreme court has stated that in circumstances "where the trial court clearly had an opportunity to review the same essential claim that was later raised on appeal," the issue is preserved despite not being raised in a postplea motion. *Id.* We therefore will address the merits of defendant's admonishment argument, despite his failure to raise the argument in his postplea motion.

¶ 29                                    2. *Merits*

¶ 30            "Generally, due process requires that in order for a defendant to knowingly and voluntarily plead guilty, a defendant must be advised of the direct consequences of a guilty plea." *People v. Hughes*, 2012 IL 112817, ¶ 35. Direct consequences are those that have a "definite, immediate, and largely automatic effect" on a defendant's sentence or other punishment that the trial court may impose. *Id.*; *People v. Delvillar*, 235 Ill. 2d 507, 521 (2009). In contrast, a collateral consequence is one that is unrelated to a defendant's sentence and that the trial court has no authority to impose. *Delvillar*, 235 Ill. 2d at 521; *People v. Williams*, 188 Ill. 2d 365, 373 (1999). Due process does not require that a defendant be admonished as to collateral consequences of his guilty plea. *Delvillar*, 235 Ill. 2d at 521-22. Examples of collateral consequences are loss of employment, loss of voting rights, loss of license, and dishonorable discharge from the military. *Hughes*, 2012 IL 112817, ¶ 36. Whether a consequence is direct or collateral is a question we review *de novo*. *Id.*

- 10 -

¶ 31　　　　Defendant argues that he should have been admonished that, upon pleading guilty, the OP that E.D. and her minor children had against him would become permanent. He argues this was a direct consequence of his plea because it was an immediate, definite, and largely automatic effect that was "related to [his] punishment." He states that the permanent OP was "punitive," and therefore a direct consequence. The State, on the other hand, argues that the OP was a collateral consequence because the trial court had no discretion in choosing to apply it and it arose out of a separate civil matter unrelated to defendant's punishment in his criminal case.

¶ 32　　　　We agree with the State. Defendant is correct that the permanent OP was an immediate and automatic result of his guilty pleas. Section 112A-20(b)(5) of the Code rendered the OP permanent upon his convictions for stalking. See 725 ILCS 112A-20(b)(5) (West 2022). However, crucially, this was not imposed by the trial court for purposes of punishing defendant. "[D]irect consequences of a guilty plea are *limited to the penal consequences of that plea*, *i.e.*, the consequences that relate to the sentence imposed on the basis of the plea." (Emphasis added.) *Williams*, 188 Ill. 2d at 373. While the OP automatically became permanent by operation of statute following defendant's guilty plea, it was not related to the sentence on that plea or imposed for purposes of punishing him.

¶ 33　　　　We find defendant's arguments that the OP was punitive to be unconvincing. He first claims that because parents have a constitutionally protected interest in maintaining a relationship with their children, the permanent denial of such a relationship serves as a punitive measure. Without disputing that such a right exists, we fail to see how the existence of this right renders the protective order in this case a punitive measure. Defendant also argues that because he was prohibited from contacting his children as a term of his probation, the OP that also prohibited him from seeing his children must serve a similar penal purpose. We disagree. While the term of

probation and the OP may have placed a similar limitation on defendant, they are not interchangeable in purpose. Orders of protection are not a punishment; rather, they exist to protect the named parties. See 725 ILCS 5/112A-1.5 (West 2022) (The purpose of the article granting orders of protection "is to protect the safety of victims of domestic violence, sexual assault, sexual abuse, and stalking and the safety of their family and household members.").

¶ 34 In short, we find that the lifetime OP was not imposed as a penalty related to defendant's sentence. Because of this, we reject defendant's argument that it was a direct consequence of his guilty plea of which the trial court was obligated to admonish him. See *Williams*, 188 Ill. 2d at 374 (stating that direct consequences are narrowly defined and include only those consequences relating to the sentence imposed on a plea).

¶ 35 The trial court's role in imposing the permanent OP further supports our conclusion that the lifetime OP was a collateral consequence. Under section 112A-20(b)(5), the OP automatically became permanent upon defendant's convictions for stalking. See 725 ILCS 112A-20(b)(5) (West 2022). The court was bound by statute to apply this section to defendant; it could not, for example, prevent the OP from becoming permanent in its sentencing discretion. To this end, its role in changing the effective date of the order at the hearing on defendant's pleas was administrative rather than authoritative. We therefore find the permanent OP was a collateral consequence, rather than a direct consequence. See *Hughes*, 2012 IL 112817, ¶ 37 (finding a consequence collateral where it was not a consequence of the defendant's sentence that the trial court could impose). Because the permanent OP was a collateral consequence, the court was not obligated to admonish defendant of it before accepting his guilty plea.

¶ 36 C. Counsel's Compliance With Rule 604(d) Requirements

¶ 37 In defendant's first alternative argument, he argues that postplea counsel did not

comply with Rule 604(d) where he failed to amend defendant's motion to include the issue of insufficient admonishments. As discussed above, we found this issue was practically preserved despite counsel's failure to include it in the amended motion. Regardless, as counsel's failure to make necessary amendments to defendant's motion is its own issue that could necessitate remand, we will address it. See *People v. Janes*, 158 Ill. 2d 27, 33 (1994) (stating that the remedy for failure to strictly comply with each of the provisions of Rule 604(d) is remand).

¶ 38        As stated previously, "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *People v. Gray*, 2023 IL App (4th) 230076, ¶ 28 (quoting *In re H.L.*, 2015 IL 118529, ¶ 7). Additionally, Rule 604(d) imposes certain requirements on counsel. It states:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. Dec. 7, 2023).

The purpose of this requirement is to "insure that counsel has reviewed the defendant's claim and considered all relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence." *People v. Shirley*, 181 Ill. 2d 359, 361 (1998). Strict compliance with Rule 604(d) is required. *Gray*, 2023 IL App (4th) 230076, ¶ 30. Even when counsel has filed a facially valid certificate of compliance, a court may consult the record to determine the extent of counsel's actual

compliance. *Id.* The question of whether counsel strictly complied with Rule 604(d) is reviewed *de novo*. *Id.*

¶ 39 Here, counsel facially complied with the requirements of Rule 604(d) in that he filed a certificate with the trial court stating that he had consulted with defendant to ascertain defendant's contentions of error, examined the relevant reports of proceedings, and made any amendments necessary for the adequate presentation of any defects in those proceedings. Defendant concedes as much. However, he argues that despite the certificate, counsel did not actually fulfill his obligations under Rule 604(d) where he did not amend defendant's motion to include a claim regarding the court's allegedly deficient admonishments. Defendant further asserts that whether the underlying improper-admonishments claim is ultimately meritorious is irrelevant in determining counsel's compliance with Rule 604(d). He cites a case from the Second District for this proposition, *People v. Winston*, 2020 IL App (2d) 180289, ¶ 18.

¶ 40 We disagree. Rule 604(d) requires that counsel amend a defendant's motion to withdraw a guilty plea as "*necessary* for adequate presentation of any defects" in the guilty plea proceedings. (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. Dec. 7, 2023). Claims that lack merit are not necessary amendments under Rule 604(d). *People v. Clark*, 2024 IL App (4th) 230751-U, ¶ 39. The ultimate merit of defendant's claim that he was improperly admonished therefore is relevant in determining if counsel failed to comply with Rule 604(d) in not raising it. As stated, we find that the permanent OP was a collateral consequence of defendant's guilty plea, and therefore, the trial court did not err in failing to admonish defendant that it would result from his plea. As a result, any argument to the contrary was not a necessary amendment to defendant's motion to withdraw his guilty plea. We therefore conclude that postplea counsel did not fail to comply with Rule 604(d).

¶ 41                          D. Ineffective Assistance of Plea Counsel

¶ 42          Defendant's final alternative argument is that the trial court abused its discretion in

not allowing him to withdraw his guilty plea where his plea counsel was ineffective in failing to

inform him that the OP would become permanent if he pleaded guilty. He maintains that if he had

been so advised by counsel, he would instead have chosen to proceed to trial instead of accepting

the plea.

¶ 43          "[T]he sixth amendment guarantees a defendant the right to effective assistance of

counsel at all critical stages of the criminal proceedings, which include the entry of a guilty plea."

*Hughes*, 2012 IL 112817 ¶ 44. To show ineffective assistance of counsel, a defendant must

establish that (1) counsel's performance was deficient and (2) the deficient performance

prejudiced the defendant. *Id.* Counsel's performance may be deficient where he does not advise a

defendant as to the collateral consequences of his guilty plea if those consequences are "severe,

certain to occur, 'enmeshed' in the criminal process, and are of predictable importance to a

defendant's calculus." *Id.* ¶ 49.

> "[W]hen a defendant claims that his counsel's deficient performance deprived him
>
> of a trial by causing him to accept a plea, the defendant can show prejudice by
>
> demonstrating a 'reasonable probability that, but for counsel's errors, *** he would
>
> not have pleaded guilty and would have insisted on going to trial.' " *Lee v. United*
>
> *States*, 582 U.S. 357, 364-65 (2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59
>
> (1985)).

¶ 44          We note that in the instant case, defendant raised the issue of ineffective assistance

of counsel in his motion to withdraw his guilty pleas, and the trial court ruled on that issue at the

hearing on the motion. "Where 'a trial court has reached a determination on the merits of a

defendant's ineffective assistance of counsel claim, we will reverse only if the trial court's action was manifestly erroneous." *People v. Glover*, 2017 IL App (4th) 160586, ¶ 26 (quoting *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25). Additionally, we accord the trial court's credibility determinations great deference. *Id.* ¶ 28. Such credibility determinations will not be disturbed absent manifest error. *Id.* The trial court's overall decision to grant or deny a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *Id.* ¶ 29.

¶ 45    Defendant argues that plea counsel had an obligation to advise him of the permanent OP that would result from his conviction because it was a consequence that was severe, certain to occur, enmeshed in the criminal process, and was of predictable importance to his calculation in deciding to plead guilty. This is not a determination we need make because we find that, even if the lifetime OP was a consequence of which plea counsel should have informed defendant, defendant has failed to meet his burden of demonstrating that counsel did not do so. At the hearing on defendant's motion to withdraw his guilty pleas, both defendant and plea counsel testified as to their discussions regarding defendant's pleas and the potential effect the pleas would have on the existing OP against him. Defendant offered unclear, conflicting testimony, first asserting that he was informed that a lifetime OP would result from a stalking conviction in his case and then, a short while later, stating that he did not remember if this had been explained to him. Plea counsel testified that defendant was primarily concerned with being released from custody and maintaining a relationship with his children. He stated that he informed defendant, "on several occasions," that to avoid the lifetime OP, defendant would have to take the case to trial. The trial court determined that Thompson was a credible witness, stating:

"I do think Mr. Thompson was credible, that he did go over everything. ***

*** Mr. Thompson did say that he did go over that information with you

- 16 -

and that, that was part of the reason you were upset on \*\*\* March 23rd \*\*\*. Mr. Thompson was clear that he informed you of that."

¶ 46    We do not find the trial court's credibility determination to be manifestly erroneous. See *id.* ¶ 28 ("Absent manifest error, we defer to the court's credibility determinations."). Because counsel credibly testified that he informed defendant that a permanent OP would result from his guilty pleas, we do not find that defendant has demonstrated deficient performance. We therefore conclude the court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea based on the ineffectiveness of counsel.

¶ 47                                 III. CONCLUSION

¶ 48    For the reasons stated, we affirm the trial court's judgment.

¶ 49    Affirmed.